SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Elizabeth Gnall v. James Gnall** (A-52-13) (073321)

**Argued November 12, 2014 -- Decided July 29, 2015**

**FERNANDEZ-VINA, J., writing for a unanimous Court.**

In this appeal, the Court considers the analysis that a trial court must employ in awarding alimony, and whether a bright line rule, based on the length of the parties' marriage, can properly exist as the basis for distinguishing between an award of permanent alimony and limited duration alimony.

The parties were married for almost fifteen years when plaintiff Elizabeth Gnall filed a complaint for divorce. Although the parties had three minor children and substantial assets, the litigation focused on the amount and type of spousal support that plaintiff, who had left her job as a computer programmer to care for the parties' children, would receive from defendant James Gnall, who was the sole wage earner, and made over $1 million annually.

In addressing plaintiff's request for alimony, the trial judge considered the requisite statutory factors for alimony stated in N.J.S.A. 2A:34-23(b), and made specific findings of fact relating to each factor. The judge found that permanent alimony was not appropriate due to the relatively young age of the parties, their educational levels, and the duration of the marriage. The court noted that while the marriage certainly was not short-term, neither was it a twenty-five to thirty-year marriage. The court also stated that the parties were not married long enough to warrant holding defendant responsible for maintaining the marital lifestyle for plaintiff. The court therefore awarded plaintiff limited duration alimony in the amount of $18,000 per month, for a period of eleven years.

Plaintiff appealed the award, contending that she was entitled to permanent alimony based on the length of the marriage and her diminished employability since she had been at home caring for the parties' children since 1999. The Appellate Division reversed and remanded for an evaluation of an award of permanent alimony. The court stated that a fifteen-year marriage is not short-term, further stating that this conclusion precludes an award of limited duration alimony. 432 N.J. Super. 129 (App. Div. 2013).

Defendant sought review of that determination by petition for certification, which was granted by the Court. 217 N.J. 52 (2014).

**HELD:** In determining a request for alimony, all of the factors enumerated in N.J.S.A. 2A:14-23(b) must be considered; the duration of the marriage is only one such factor. The Appellate Division erroneously created a bright-line rule that a fifteen-year marriage requires an award of permanent alimony, contrary to the need to consider all of the statutory factors. The trial court also improperly relied upon the duration of the marriage over the other statutory factors in determining that, since the marriage was not one of twenty-five to thirty years, permanent alimony was not warranted, and therefore awarded limited duration alimony.

1. Findings by a trial court are binding on appeal when supported by adequate, substantial and credible evidence. The court on appeal will not disturb the factual findings and legal conclusions of the trial court unless they are manifestly unsupported by, or inconsistent with, competent, relevant and reasonable credible evidence such that they offend the interests of justice. (pp. 14-15)

2. Whether alimony should be awarded is governed by the standards set forth in N.J.S.A. 2A:34-23(b). When determining whether alimony is appropriate, the trial court is required to make findings of fact and state specific reasons in support of its conclusion, and correlate them with the relevant legal conclusions. (pp. 15-17)

3. New Jersey recognizes four types of alimony that may be awarded upon a final judgment of divorce: permanent

alimony, rehabilitative alimony, limited duration alimony, and reimbursement alimony. The trial court is required to assess first the availability of permanent alimony. If the court determines that permanent alimony is not warranted, the court must state specific findings and reasons for its conclusion. Only then can the court make specific findings on the applicability of the three other types of alimony to determine which one, or combination thereof, is warranted by the parties' circumstances and the nature of the case. (p. 18)

4. Permanent alimony is intended to allow the dependent spouse to live the same lifestyle to which he or she became accustomed during the marriage. The court has broad discretion when awarding permanent alimony because no two cases are alike. When determining the amount of an award, the court must evaluate the actual needs of the dependent party and the actual means of the other party. (pp. 18-19)

5. Limited duration alimony is intended to address a dependent spouse's needs following a shorter-term marriage where permanent or rehabilitative alimony would be inapplicable or inappropriate, but where economic assistance for a limited time would be just. Where all other statutory factors are equal, the duration of the marriage marks the defining distinction as to whether permanent or limited duration alimony is warranted. Limited duration alimony may not be awarded where permanent alimony is warranted. (pp. 19-20)

6. Rehabilitative alimony is a short-term award intended to provide financial support to a spouse while he or she prepares to reenter the workforce through training or education in order to improve earning capacity and prepare for economic self-sufficiency. The fourth type of alimony, reimbursement alimony, is awarded to a spouse who has made financial sacrifices, resulting in a temporarily reduced standard of living, to allow the other spouse to secure an advanced degree or professional license and thereby enhance the parties' future standard of living. Both rehabilitative and reimbursement alimony can be awarded separately, or in combination with another type of alimony. (pp. 20-22)

7. The trial court, in determining that permanent alimony was unwarranted, failed to consider and weigh all of the statutory factors. Instead, the court based its decision to preclude permanent alimony solely on the length of the marriage, noting that the parties were married for nearly fifteen years, rather than twenty-five or thirty years. The trial court improperly weighed the duration of the marriage over the other statutory factors, and determined, in effect, that permanent alimony awards are reserved for long-term marriages of twenty-five years or more. However, no rule exists precluding an award of permanent alimony unless a marriage of that length is shown. (pp. 24-25)

8. The Appellate Division, in declaring a fifteen-year marriage not to be short term and thereby precluding an award of limited duration alimony, inadvertently created a bright-line rule for an award of permanent alimony by failing to clarify that its statement constituted an assessment of the specific facts of this case, rather than a rule of general application. The court's determination erroneously removes consideration of the other statutory factors for alimony where a marriage reaches the fifteen year mark. This is contrary to the requirement that all statutory factors must be considered and given due weight. (pp. 25-26)

The judgment of the Appellate Division is **REVERSED,** and the matter is **REMANDED** to the trial court for new findings of fact and a new determination of alimony.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion.**

ELIZABETH GNALL,

     Plaintiff-Respondent,

        v.

JAMES GNALL,

     Defendant-Appellant.


        Argued November 12, 2014 – Decided July 29, 2015

        On certification to the Superior Court,
        Appellate Division, whose opinion is
        reported at 432 N.J. Super. 129 (2013).

        Donald P. Jacobs argued the cause for
        appellant (Budd Larner, attorneys; Barry L.
        Baime, of counsel).

        Dale Elizabeth Console argued the cause for
        respondent.

        Paris P. Eliades, President, argued the
        cause for amicus curiae New Jersey State Bar
        Association (Mr. Eliades, Brian M. Schwartz,
        Ulrichsen Rosen & Freed, and Szaferman,
        Lakind Blumstein & Blader, attorneys; Ralph
        J. Lamparello, of counsel; Mr. Lamparello,
        Mr. Schwartz, Derek M. Freed, and Brian G.
        Paul, on the brief).

        Sheryl J. Seiden argued the cause for amicus
        curiae The New Jersey Chapter of the
        American Academy of Matrimonial Lawyers
        (Ceconi & Cheifetz, Einhorn Harris Ascher
        Barbarito & Frost, Adinolfi & Goldstein, and
        Fox Rothschild, attorneys; Cary B. Cheifetz,
        President, of counsel; Ms. Seiden, Mr.
        Cheifetz, Bonnie C. Frost, Ronald G.

1

Lieberman, and Eric S. Solotoff, on the
brief).

John E. Finnerty, Jr., argued the cause for
amicus curiae Matrimonial Lawyers Alliance
(Finnerty Canda & Drisgula, Laufer, Dalena,
Cadicina, Jensen & Boyd, and Snyder & Sarno,
attorneys; Mr. Finnerty, Laurence J. Cutler,
and John J. Trombadore, on the brief).

JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

In this appeal, the Court examines a trial court's award of limited duration alimony and determines whether it was appropriate for the Appellate Division to reverse and remand for an award of permanent alimony, when, in doing so, it created a bright-line rule regarding permanent alimony awards.

This case stems from a divorce, that ended an almost fifteen-year marriage. Litigation proceedings focused on the amount and type of spousal support plaintiff Elizabeth Gnall would receive from defendant James Gnall. James was the sole wage earner of the family, making over $1,000,000.00 annually, while Elizabeth stayed home to raise their three children.

The trial judge considered the thirteen statutorily defined factors regarding alimony, N.J.S.A. 2A:34-23(b), and made specific findings of fact relating to each factor. The judge found, among other considerations, that permanent alimony was not appropriate due to the relatively young age of the parties, their educational levels, and the duration of the marriage. The judge determined that the marriage "certainly was not short-

2

term, but neither [was it] a twenty-five to thirty-year marriage." Moreover, the judge determined that "the parties were not married long enough" for James to be held responsible for Elizabeth's ability to maintain their marital lifestyle. Therefore, the trial court awarded Elizabeth limited duration alimony, in the amount of $18,000 per month, for a period of eleven years.

Elizabeth appealed the award, arguing that she was entitled to permanent alimony due to the length of the marriage, as well as her diminished employability. The Appellate Division reversed and remanded the case for an award of permanent alimony, reasoning that a fifteen-year marriage is "not short-term," therefore precluding "consideration of an award of limited duration alimony." Gnall v. Gnall, 432 N.J. Super. 129 (App. Div. 2013).

James appealed to this Court, arguing that the Appellate Division erred in reversing the trial court's decision and improperly created a bright-line rule regarding the length of marriage in an alimony case.

For the reasons that follow, we reverse the Appellate Division's judgment and remand to the trial court for new findings of fact and a new determination of an alimony award. We find that the Appellate Division effectively created a bright-line rule that fifteen-year marriages require permanent

3

alimony awards which is contrary to the legislative intent underlying N.J.S.A. 2A:34-23.

I.

James and Elizabeth Gnall met in 1985 while they were both pursuing bachelor's degrees at the State University of New York in Buffalo. The couple was engaged eight years later, and married on June 5, 1993. The couple began to experience marital differences in October 2007, and on March 10, 2008, Elizabeth filed a complaint for divorce.

At the time of their marriage, Elizabeth had obtained a bachelor's degree in electrical engineering and a master's degree in computer science. Initially, Elizabeth worked as a computer programmer on the foreign exchange sales desk at Goldman Sachs in New York City. Following that job, Elizabeth worked in a similar position at Banker's Trust through 1999.

James obtained an accounting degree in 1989, and then earned his Certified Public Accountant license. In June 2003, he obtained a job at Deutsche Bank, where he is currently employed as Chief Financial Officer of the bank's Finance Division in America.

After the birth of their first child, the Gnalls hired a nanny, and Elizabeth continued to work full-time. However, in 1999, the parties decided it would be best if Elizabeth stopped

4

working in order to remain at home to care for the children full-time.

James and Elizabeth have three children, who, at the time the judgment of divorce was entered, were twelve, eleven, and eight years old.  Pursuant to their custody agreement, Elizabeth is the primary caretaker of the children.  James has parenting time every other weekend, and sees the children occasionally on Wednesday nights for dinner.

After 1999, James was the sole wage earner.  James's total compensation was $751,000 in 2005, $1,001,000 in 2006, $1,075,000 in 2007, and $1,800,000 in 2008.  The parties owned several vehicles throughout the course of their marriage, including a 1998 Nissan Maxima and a 2007 Cadillac Escalade. James and Elizabeth frequently vacationed, both with and without their children.  Those vacations included trips to Disneyworld and renting oceanfront mansions in North Carolina.

In 2006, Elizabeth faced serious health issues and underwent brain surgery.  She has since been able to resume a normal life with only some minor facial paralysis.

A.

The trial took place over eighteen non-consecutive days beginning on April 8, 2009, and concluding on May 19, 2010. Both James and Elizabeth testified.  Lifestyle expert Rufino Fernandez, Esq., testified on Elizabeth's behalf about the

economic valuation of assets and the marital standard of living. Fernandez analyzed the expenses and assets of the parties from 2004 through 2007 and authored a report, which was admitted into evidence. Fernandez testified that with the three children, Elizabeth would need $24,252 per month to maintain the marital lifestyle. However, on cross-examination, Fernandez admitted that this evaluation of the marital lifestyle was based on the whole family, not just Elizabeth and the three children. Adjusting for James's absence, the ordinary expenses for the family should be $18,578.

Each party also presented an expert witness to testify about Elizabeth's future employability. Dr. Charles Kincaid testified on behalf of Elizabeth, and Dr. David Stein testified on behalf of James. Both experts concluded that Elizabeth would be most successful pursuing a career in the computer field. Each expert however testified to a different potential starting salary.

Dr. Stein opined that Elizabeth could obtain an entry-level position earning between $58,000 and $69,000. According to Dr. Stein, Elizabeth would need only eight to twelve weeks to update her skills due to both her mathematics background and her experience as a software engineer. Finally, Dr. Stein opined that if Elizabeth was motivated to work, her salary would rapidly increase to the national average of other computer

programmers, making on average $80,000 to $94,000 annually, up to a maximum of $120,000.

Dr. Kincaid testified that Elizabeth would be successful as a software engineer or a computer systems analyst. However, Dr. Kincaid concluded that Elizabeth would need at least one to two years of retraining before being able to obtain any job in the computer field, because she had been out of the field for some time, and would need to relearn software languages. Dr. Kincaid then opined that after retraining, Elizabeth would be able to obtain a job making between $50,623 and $56,765. Both experts testified that Elizabeth indicated she wanted to focus on her children instead of going back to work immediately.

Elizabeth sought employment as a math teacher following the divorce. She began to take online courses to obtain her teaching license in New Jersey, reasoning that the online program gave her flexibility to take care of her children. Elizabeth stated that the teaching position would allow her to have a similar schedule to her children so she could continue to care for them.

B.

The trial court, in a written opinion addressed six issues: (1) alimony; (2) custody and parenting time; (3) child support; (4) insurance coverage; (5) distribution of assets; and (6) counsel fees. This appeal centers only on the issue of alimony.

We do not comment on the trial court's findings regarding the other five issues.

In determining the alimony award, the court first reviewed the general summary of the parties' marriage. The court then addressed each of the thirteen factors set forth in N.J.S.A. 2A:34-23(b). The trial court found that although the marriage lasted fifteen years, the case was not a permanent alimony case, but rather one requiring limited duration alimony. The court reasoned that the parties were relatively young with at least twenty-three career years before them, both were well educated, in good health, and were either employed or employable at good salaries that could support excellent lifestyles for themselves and their children.

The trial court determined that the marriage "certainly was not short-term, but neither [was it] a twenty-five to thirty-year marriage." Moreover, the court determined that "the parties were not married long enough" for James to be held responsible for Elizabeth's ability to maintain their marital lifestyle. Therefore, the court ultimately ordered limited duration alimony in the amount of $18,000 per month from October 2010 through September 2021, the year the youngest child will reach the age of majority.

II.

8

In a published opinion, the Appellate Division reversed the trial court's award of limited duration alimony and remanded the case for an award of permanent alimony. Gnall v. Gnall, 432 N.J. Super. 129, 156 (App. Div. 2013). The panel concluded that the trial court failed to make the specific statutory findings for all of the factors set forth in N.J.S.A. 2A:34-23(c). Ibid. The Appellate Division further found that the trial court failed to consider all of the evidence of the marital enterprise, including Elizabeth's likely inability to achieve a lifestyle close to that of the marital standard while living on her own.

In making its determination, the Appellate Division stated:

> We do not intend to draw specific lines delineating "short-term" and "long-term" marriages in an effort to define those cases warranting only limited duration rather than permanent alimony. We also underscore it is not merely the years from the wedding to the parties' separation or commencement of divorce that dictates the applicability or inapplicability of permanent alimony. Nevertheless, we do not hesitate to declare a fifteen-year marriage is not short-term, a conclusion which precludes consideration of an award of limited duration alimony.
>
> [Id. at 153 (emphasis added).]

The panel rejected Elizabeth's assertions that the trial judge abused his discretion when considering the marital standard of living. Id. at 156. However, the panel directed that on remand, the judge should make findings regarding N.J.S.A. 2A:34-23(b)(8), "the opportunity for future

9

acquisitions of capital assets and income." Id. at 157. Moreover, the Appellate Division concluded that the trial court erred when imputing a full-time salary to Elizabeth, because the parties did not anticipate that she would immediately resume employment. Id. at 160. The panel therefore instructed that the remand judge address the date of imputation based on the cost and time required for Elizabeth's retraining. Id. at 160-61. Finally, the panel mandated that if alimony was amended, then the child support amount should also be reanalyzed. Id. at 162.

On September 24, 2013, James filed a petition for certification, challenging only the issue of alimony. This Court granted certification on January 21, 2014. Gnall v. Gnall, 217 N.J. 52 (2014).

### III.

#### A.

Defendant James Gnall asks this Court to reverse the Appellate Division's judgment and affirm the trial court's award of limited duration alimony.

First, James argues that the Appellate Division improperly created a bright-line rule, stating that any marriage lasting fifteen years or more is considered "long-term." James suggests that this bright-line rule inappropriately establishes the

10

length of the marriage as the most important factor in an alimony determination, contrary to both statutes and case law.

James further argues that an award of permanent alimony in this case is punishment, contrary to the mandate in Mani v. Mani, 183 N.J. 70, 80 (2005) and improperly gives Elizabeth a windfall.

James also argues that the Appellate Division did not give due deference to the trial court's findings of fact. James maintains that the court did not abuse its discretion by awarding limited duration alimony to Elizabeth, and that the court properly evaluated all of the criteria set forth in N.J.S.A. 2A:34-23.

In response, Elizabeth urges this Court to affirm the decision of the Appellate Division. In support of her position, Elizabeth first maintains that the Appellate Division did not create a bright-line rule. Instead, she argues that the questioned language is dicta, and is consistent with N.J.S.A. 2A:34-23(c). Elizabeth emphasizes that the overarching theme of the Appellate Division's decision was that there is no exact science to awarding alimony, and the court should account for all factors relevant to the determination, particularly her inability to maintain a lifestyle close to the marital lifestyle without James's economic assistance.

Elizabeth asserts that the Appellate Division properly held the duration of the marriage in equal regard to all of the other factors. She further claims that N.J.S.A. 2A:34-23 requires the court to consider permanent alimony first and only turn to a consideration of limited duration alimony once it has concluded that permanent alimony is not appropriate.

Elizabeth stresses that the parties' fifteen-year marriage was "long-term," or at least on the cusp of long-term, and therefore, an evaluation should first be undertaken as to whether permanent alimony is appropriate. She also argues that the ages of the children should play an important role in deciding the type of alimony because she has the primary responsibility for them, and defendant only has parenting time every other weekend.

Finally, Elizabeth reiterates that James earns between $1.5 million and $2.1 million annually, and that his financial success is a product of their marriage and partnership. She emphasizes that her role as caretaker of the parties' children will detract from her employability and argues that when the youngest child goes to college -- the same time that the alimony ends -- she will be at a significant financial disadvantage.

B.

This Court granted motions on behalf of the Matrimonial Lawyers Alliance, the New Jersey Chapter of the American Academy

12

of Matrimonial Lawyers, and the New Jersey State Bar Association to argue as amici curiae.

The Matrimonial Lawyers Alliance (MLA) urges this Court to affirm the Appellate Division's decision to remand the case to the trial court for further analysis of the statutory factors under N.J.S.A. 2A:34-23. The MLA recommends that this Court require trial courts to analyze the marital relationship and arrangements made during the marriage, focusing on the impact those decisions would have on the economic positions of each spouse at the end of the relationship. Next, the MLA argues that guidance is needed to ensure that trial courts concentrate on the importance of the parties' lifestyle and whether the parties are able to maintain a reasonable lifestyle in the future. Finally, the MLA argues that the Appellate Division did not create a bright-line rule because each alimony case is different and an alimony decision is based upon a multitude of factors.

The New Jersey Chapter of the American Academy of Matrimonial Lawyers (NJAAML) asserts that "actual economic dependency" has been the threshold for an award of alimony. Therefore, the NJAAML stresses that consideration of economic dependency is important, particularly in light of studies showing a decline in the standard of living for women post-divorce.

13

Finally, the New Jersey State Bar Association (NJSBA) urges this Court to affirm the Appellate Division's decision. The NJSBA relies on public policy considerations and concludes that the statutory scheme of N.J.S.A. 2A:34-23 requires courts to analyze particular facts in order to craft an alimony award that is "fit, reasonable and just" given the "circumstances of the parties and the nature of the case." Moreover, the NJSBA argues that the Appellate Division did not create a bright-line rule because the court did not require the trial court to enter a judgment for permanent alimony. Instead, the NJSBA argues the Appellate Division instructed the trial court only to perform an evaluation of the required factors to determine if an award of permanent alimony is appropriate.

IV.

A.

The general rule is that findings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). We defer to the credibility determinations made by the trial court because the trial judge "hears the case, sees and observes the witnesses, and hears them testify," affording it "a better perspective than a reviewing court in evaluating the veracity of a witness." Id. at 412 (citing Pascale v. Pascale, 113 N.J. 20, 33 (1988)).

14

If the trial court's conclusions are supported by the evidence, we are inclined to accept them. Ibid. We do "not disturb the 'factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark'" should we interfere to "ensure that there is not a denial of justice." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007)).

When analyzing whether permanent alimony is appropriate, the trial court is required to make findings of fact and to state specific reasons in support of its conclusion. R. 1:7-4(a). Failure to make explicit findings and clear statements of reasoning "'constitutes a disservice to the litigants, the attorneys, and the appellate court.'" Curtis v. Finneran, 83 N.J. 563, 569-70 (1980) (quoting Kenwood Assocs. v. Bd. of Adjustment of Englewood, 141 N.J. Super. 1, 4 (App. Div. 1976)). The trial judge is required to "state clearly its factual findings and correlate them with the relevant legal conclusions." Id. at 570.

Our analysis of this appeal requires that we examine the different types of alimony and the analysis required by a trial court before deciding an award of alimony.

B.

Alimony relates to support and standard of living; it involves the quality of economic life to which one spouse is entitled, which then becomes the obligation of the other. Mahoney v. Mahoney, 91 N.J. 488, 501-02 (1982); see also Khalaf v. Khalaf, 58 N.J. 63, 67 (1971).  Whether alimony should be awarded is governed by distinct, objective standards defined by the Legislature in N.J.S.A. 2A:34-23(b).  When alimony is requested, the statute requires that the court consider and make specific findings regarding:

> (1)  The actual need and ability of the parties to pay;
>
> (2)  The duration of the marriage or civil union;
>
> (3)  The age, physical and emotional health of the parties;
>
> (4)  The standard of living established in the marriage or civil union and the likelihood that each party can maintain a reasonably comparable standard of living;
>
> (5)  The earning capacities, educational levels, vocational skills, and employability of the parties;

(6)  The length of absence from the job market of the party seeking maintenance;

(7)  The parental responsibilities for the children;

(8)  The time and expense necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(9)  The history of the financial or non-financial contributions to the marriage or civil union by each party including contributions to the care and education of the children and interruption of personal careers or educational opportunities;

(10) The equitable distribution of property ordered;

(11) The income available to either party through investment of any assets held by that party;

(12) The tax treatment and consequences to both parties of any alimony award;

(13) Any other factors which the court may deem relevant.

[N.J.S.A. 2A:34-23(b).]

17

N.J.S.A. 2A:34-23(c)[1] requires that the court make "specific findings on the evidence" regarding the statutory factors relevant to the particular alimony award.

### C.

New Jersey recognizes four separate types of "final award" alimony that may be ordered in the final judgment of divorce. They are permanent alimony, rehabilitative alimony, limited duration alimony, and reimbursement alimony. N.J.S.A. 2A:34-23. Permanent alimony is to be assessed first and if the trial court determines that an award of permanent alimony is not warranted, then the court must make specific findings, based on the evidence, setting out the reasons. N.J.S.A. 2A:34-23(c). Only then shall the court "make specific findings" on the applicability of the three remaining authorized alimony awards to discern which one, or any combination of the three, is "warranted by the circumstances of the parties and the nature of the case." N.J.S.A. 2A:34-23(f).

### i.

The first type of alimony to be considered is permanent alimony. The concept of permanent alimony stems from the well-

---

[1] N.J.S.A. 2A:34-23(c) was amended on September 10, 2014 to specify that "[f]or any marriage or civil union less than 20 years in duration, the total duration of alimony shall not, except in exceptional circumstances, exceed the length of the marriage or civil union. . . ." The amendment is not applicable to this case.

18

established common law principle that a husband has a duty to support his wife after a divorce or separation.  Bonanno v. Bonanno, 4 N.J. 268, 273 (1950).  The purpose of this type of alimony is to allow the dependent spouse to live the same lifestyle to which he or she grew accustomed during the marriage.  Crews v. Crews, 164 N.J. 11, 26 (2000).

When awarding permanent alimony, courts have great judicial discretion, because "no two cases are alike."  Bonanno, supra, 4 N.J. at 273.  When determining the amount of alimony to be awarded, courts are instructed to evaluate the actual needs of the wife and the actual means of the husband, along with

> the physical condition and social position of the parties, the husband's property and income (including what he could derive from personal attention to business), and also the separate property and income of the wife.  Considering all these, and any other factors bearing upon the question, the sum is to be fixed at what the wife would have [expected] as support, if [she were still] living with her husband.
>
> [Schaeffer v. Schaeffer, 119 N.J. Eq. 27, 29 (E. & A. 1935).]

ii.

The second type is limited duration alimony.  This type of alimony was created as a remedy in order to address a dependent spouse's post-divorce needs following "shorter-term marriage where permanent or rehabilitative alimony would be inappropriate or inapplicable but where, nonetheless, economic assistance for

19

a limited period of time would be just."  J.E.V. v. K.V., 426 N.J. Super. 475, 485-86 (App. Div. 2012) (quoting Cox v. Cox, 335 N.J. Super. 465, 477 (App. Div. 2000)).

Limited duration alimony is not to be awarded in circumstances where permanent alimony is warranted.  Cox, supra, 335 N.J. Super. at 477.  "All other statutory factors being in equipoise, the duration of the marriage marks the defining distinction between whether permanent or limited duration alimony is warranted and awarded."  Id. at 483.

iii.

The third type of alimony is rehabilitative alimony. Rehabilitative alimony is a short-term award for the purpose of financially supporting a spouse while he or she prepares to reenter the workforce through training or education.  Lepis v. Lepis, 83 N.J. 139, 162 (1980).  It is an award "from one party in a divorce [to] enable [the] former spouse to complete the preparation necessary for economic self-sufficiency."  Hill v. Hill, 91 N.J. 506, 509 (1982).  The objective of rehabilitative alimony is to assist the dependent spouse in obtaining gainful employment so as to "enhance and improve the earning capacity of the economically dependent spouse."  Cox, supra, 335 N.J. Super. at 475.

An award of rehabilitative alimony is appropriate where "a spouse who gave up or postponed her own education to support the

20

household requires a lump sum or a short-term award to achieve economic self-sufficiency." Mahoney, supra, 91 N.J. at 504. Rehabilitative alimony is not an exclusive remedy, and may, in the appropriate circumstance, be awarded in addition to permanent alimony. Hughes v. Hughes, 311 N.J. Super. 15, 32 (App. Div. 1998).

iv.

Finally, courts may consider a fourth type of alimony, reimbursement alimony. Reimbursement alimony was created to help combat the concept that professional degrees and licenses are "property" subject to equitable distribution at the termination of a marriage. See Mahoney, supra, 91 N.J. 500-01; see also Hill, supra, 91 N.J. 509-10. Reimbursement alimony is awarded appropriately to a spouse who has made financial sacrifices, resulting in a temporarily reduced standard of living, in order to allow the other spouse to secure an advanced degree or professional license to enhance the parties' future standard of living. Mahoney, supra, 91 N.J. at 500-01; N.J.S.A. 2A:34-23(e).

Reimbursement alimony is limited to "monetary contributions made with the mutual and shared expectation that both parties to the marriage will derive increased income and material benefits." Mahoney, supra, 91 N.J. at 502-03. Like rehabilitative alimony, reimbursement alimony can be awarded on

its own or in combination with another type of alimony. N.J.S.A. 2A:34-23(f).

V.

We now turn to the facts of this case and consider whether the Appellate Division erred in reversing and remanding the limited duration alimony award and directing the trial court to consider permanent alimony. We find that the trial court did not consider and weigh all of the necessary factors required by N.J.S.A. 2A:34-23 in determining that permanent alimony was unwarranted but, instead, based its decision solely on N.J.S.A. 2A:34-23(b)(2). We further conclude that in reversing the Appellate Division inadvertently created a bright-line rule requiring an award of permanent alimony.

The trial court made the following findings under N.J.S.A. 2A:34-23(b):

> (1) The court imputed $65,000 to Elizabeth annually, reasoning that she is now capable of earning between $61,200 and $94,000, as per the experts' opinions.
>
> (2) The court found that "the marriage [was] one of just under fifteen years."
>
> (3) The court noted that both parties were forty-two years old at the commencement of the trial. It further found that Elizabeth underwent serious brain surgery in November 2006, and although she suffers residual facial paralysis, she has made a full recovery to normal life, including a "serious ice-hockey avocation."

22

(4) The court observed that although "[t]he parties enjoyed a more modest lifestyle than [James]'s income would dictate," it concluded that their lifestyle constituted that of an "upper middle class" family.

(5) The court highlighted that Elizabeth has been a stay-at-home mother for eleven years, but before that she earned a master's degree in computer programming and she has the ability to reenter that field with an entry-level salary of between $61,200 and $94,000. The trial court noted, however, that Elizabeth has not tried to attain any employment since the filing of the divorce papers. On the other hand, the court emphasized that James has worked in the financial field the entire marriage and has income that steadily increased, culminating in an annual compensation package in excess of $1 million.

(6) The court found that Elizabeth has been absent from the job market for eleven years, while James never experienced any absence.

(7) The court observed that Elizabeth was and continues to remain the primary parent responsible for the parties' three children ages twelve, eleven and eight years.

(8) The court explained that the parties' experts differed on Elizabeth's future employability and her required retraining to enter the workforce again. Specifically, Elizabeth's expert, Dr. Kincaid, concluded that she would be best off re-entering the computer field following one or two years of additional education courses. He estimated that she would make between $61,220 and $67,910 annually. On the other hand, Dr. Stein

23

claimed it would only take Elizabeth six to twelve weeks to become current in the field and then she could enter the market earning an annual salary between $85,000 and $94,000, increasing to $120,000 within a few years.

(9) The trial court described that the parties, while both highly educated, had vastly different roles to play in the marriage. James was the sole breadwinner of the family while Elizabeth forewent her career to stay home and care for the children.

(10) The court noted that the parties agreed to equally divide the marital assets, yielding each of them approximately $750,000.

(11) The court reiterated that the parties agreed to equally divide the marital assets, yielding each of them approximately $750,000.

(12) The court concluded that the alimony paid to Elizabeth would be taxable to her.

(13) None.

While the trial court identified the marriage as "not short-term," it ultimately concluded that consideration of an award of permanent alimony was obviated by the parties' relatively young ages and the fact that they were not married for twenty-five or thirty-years. The trial court therefore, in effect, determined that permanent alimony awards are reserved solely for long-term marriages of twenty-five years or more, excluding consideration of the other factors. No per se rule exists indicating that permanent alimony is unwarranted unless

24

the twenty-fifth year anniversary has been reached.  Therefore, we find that the trial court improperly weighed duration over the other statutorily defined factors in determining a long-term marriage must be twenty-five years or more.

We further conclude that in its disposition of this appeal the Appellate Division inadvertently created a bright-line rule for distinguishing between a short-term and long-term marriage as it pertains to an award of permanent alimony.  Although the Appellate Division stated "we do not intend to draw specific lines delineating 'short-term' and 'long-term' marriages in an effort to define those cases warranting only limited duration rather than permanent alimony," a fair reading of the opinion may lead to such a conclusion.  By not clarifying that the statement reflected only the fifteen-year marriage in this particular case, the Appellate Division made a generally applicable declaration.

Moreover, we note that the final clause of the sentence affirms that the "not short-term" nature of a fifteen-year marriage mandates that it cannot be considered for limited duration alimony.  Such a holding removes the other twelve factors from consideration for alimony awards once a marriage reaches the fifteen-year mark.  Our cases have consistently held that all thirteen factors must be considered and given due

25

weight, and the duration of marriage is only one factor to be considered.

VI.

For the reasons set forth above, the judgment of the Appellate Division is reversed, and the case is remanded to the trial court for new findings of fact and a new determination of alimony.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion.

SUPREME COURT OF NEW JERSEY

NO.     A-52                          SEPTEMBER TERM 2013

ON CERTIFICATION TO     Appellate Division, Superior Court


ELIZABETH GNALL,

        Plaintiff-Respondent,

              v.

JAMES GNALL,

        Defendant-Appellant.


DECIDED              July 29, 2015
              Chief Justice Rabner                    PRESIDING
OPINION BY     Justice Fernandez-Vina
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |