**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1356-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DAVID COMPANIONI,
a/k/a NEDAL IBARRA,
NEDAL NASRALLAH,
and NEDAL
NASRALLAHIBARRA,

     Defendant-Appellant.

_____

Submitted January 27, 2021 – Decided February 19, 2021

Before Judges Rose and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 13-06-0114.

Joseph E. Krakora, Public Defender, attorney for appellant (Al Glimis, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Sarah D. Brigham, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant David Companioni appeals from an October 4, 2019 order denying his petition for post-conviction relief (PCR) following an evidentiary hearing. Because the PCR judge's decision lacks the requisite findings of fact and conclusions of law as required by Rule 1:7-4(a), we vacate the order and remand the matter for further proceedings.

For his part in cultivating marijuana plants at his apartment and a warehouse, defendant was charged in a State grand jury indictment with second-degree conspiracy to distribute twenty-five pounds or more of marijuana (count one), first-degree possession with intent to distribute twenty-five pounds or more of marijuana (count two), and first-degree maintaining or operating a controlled dangerous substance (CDS) production facility (count three). Prior to trial, defendant moved to suppress evidence seized after the issuance of a communications data warrant (CDW) that authorized the placement of a GPS tracking device on his co-defendant's car. Defendant contended the GPS device was installed before the search warrant was issued. The trial judge denied defendant's suppression motion.

Pertinent to this appeal, defendant rejected all plea offers extended by the prosecution. A jury convicted defendant on count two, as amended to a second-

2

degree offense and count three as charged. The jury was unable to reach a unanimous verdict on count one, which was thereafter dismissed on motion of the prosecutor. The trial judge granted the State's motion for an extended term[1] and sentenced defendant to an aggregate term of twenty years, with a parole disqualifier of six years and eight months. Defendant filed a direct appeal, limiting his contentions to the denial of his suppression motion. We affirmed, State v. Companioni, No. A-1402-15 (App. Div. Feb. 7, 2018), and the Supreme Court denied certification, 234 N.J. 197 (2018).

Defendant thereafter filed a timely pro se PCR petition raising a litany of issues attacking his trial counsel's effectiveness. After PCR counsel was assigned, defendant amended his petition. Following oral argument, the PCR judge, who also presided over the trial and sentencing proceedings, concluded nearly all of defendant's allegations against trial counsel would not have changed the outcome at trial. In reaching her decision, the judge noted the "overwhelming" evidence against defendant in this case.

But the PCR judge granted defendant's request for an evidentiary hearing, limiting the scope of the hearing to a single issue: whether trial counsel

---

[1] Because defendant had a prior conviction for CDS distribution, he was subject to a mandatory extended term upon application of the State. N.J.S.A. 2C:43-6(f); see also N.J.S.A. 2C:43-7.

misadvised defendant that he could only appeal the judge's denial of his suppression motion after trial. Defendant asserted he would have accepted the State's plea offer – rather than go to trial – had trial counsel advised he could appeal the judge's suppression decision.

During the one-hour evidentiary hearing, defendant presented the testimony of trial counsel and testified on his own behalf. The State did not present any evidence. No documents were admitted in evidence.

Trial counsel testified about his legal experience. He recalled the weaknesses of the case, including defendant's confession to law enforcement "as to how much marijuana he wanted to sell, how much he grew, and who he was going to sell it to." Trial counsel said he "strongly encouraged" defendant to resolve the matter pretrial to avoid "facing the extended term." Counsel said he had "at least twenty" conversations with defendant about pleading guilty.

Regarding trial counsel's communication with defendant regarding the right to appeal the denial of his suppression motion, the following exchange ensued:

> PCR COUNSEL: Okay. Did [defendant] ask you about appealing the motion to suppress that you had lost?
>
> TRIAL COUNSEL: No.

4

PCR COUNSEL:  You don't recall any conversation about that taking place?

TRIAL COUNSEL:  No.

PCR COUNSEL:  Okay.  And . . . if there was a discussion you would remember it though, right?

TRIAL COUNSEL:  I would.

PCR COUNSEL:  Okay.  And so, it's your testimony today that there was no conversation with [defendant] about whether or not he could appeal this motion to suppress, correct?

TRIAL COUNSEL:  I don't recall having a conversation like that because it is something I would have remembered.

When asked whether he was "aware of what is appealable after [a defendant] plead[s] guilty in a particular case," trial counsel stated:  "I believe every motion and such would be appealable."  An exchange occurred during which trial counsel explained he was "just speaking to the [suppression] motion [he] filed."  Trial counsel also said he socialized with defendant, which prompted defendant to retain him, although counsel said he "would have done it for free for [defendant]."  Trial counsel said they are "still" friends.

On cross-examination, the State elicited the following testimony:

PROSECUTOR:  You said you don't recall engaging and having conversations about appealing a motion to suppress.  That is correct, right?

5

TRIAL COUNSEL:  That is correct.

PROSECUTOR:  So, you definitely didn't tell him, "Oh no, you cannot appeal?"

TRIAL COUNSEL:  Oh, heck no, I didn't tell him that.

PROSECUTOR:  You didn't say, oh you have to go to trial in order to appeal this motion to suppress; correct?

TRIAL COUNSEL:  That is correct.

PROSECUTOR:  You did not tell him that?

TRIAL COUNSEL:  That is correct.  I did not tell him that.

Defendant testified to a vastly different version of his discussions with trial counsel, claiming his attorney did "a poor job when it came to convincing" defendant whether he "should accept a plea or go to trial."  Defendant testified trial counsel told him:  "In order for us to appeal we had to go to trial."  Defendant asserted he "wasn't informed until now that you could actually accept a plea bargain and appeal afterwards."

When asked whether he would have pled guilty had he known he could appeal the suppression decision thereafter, defendant testified:

> Of course.  And . . . on top of that, if you would have told me the process of an appeal, how long it takes, what I got to [d]o just to get to a PCR; what I have to do [to get] a direct appeal; how I got to appeal to the

6

state Supreme [Court] – he didn't inform me . . . on none [sic] of those steps. [Trial counsel] never even informed me how long it takes. Those were factors for me to consider. If I knew it took almost four years just to get a PCR, . . . I would just have accepted the plea offer. I would have been home a long time ago. He never told me . . . nothing [sic]. I just assumed that I would have to go to trial then appeal afterwards. I thought those were the steps.

On cross-examination, defendant acknowledged: he "confessed to the plants that were found in [his] residence"; he thought a jury would not return a guilty verdict on marijuana charges; and trial counsel spoke with him "multiple times" about pleading guilty. Defendant also testified that "right before the verdict came out, the prosecutor . . . offered three and a half years," but trial counsel immediately rejected the offer without speaking with defendant. Because the State had previously offered to limit his exposure to ten years, defendant assumed they had "a good shot" at a not-guilty verdict.

Immediately following defendant's testimony, the PCR judge issued a terse decision from the bench that accompanied the order denying defendant's petition. The judge briefly summarized her recollection of the pretrial plea negotiations in view of defendant's extended-term sentencing exposure and the "overwhelming evidence" against him.

Noting the issue before her "was limited [to] the purposes of determining if trial counsel advised . . . defendant that he could not appeal the suppression [decision] if he pled guilty," the judge concluded:

> [Trial counsel] said that he has no recollection telling the defendant that. [D]efendant testified and said that he has no recollection of [trial counsel] telling him that he could appeal in any way, shape or form except for going through trial.
>
> Honestly, I find that both of these individuals – I found their testimony credible. I don't know. Somewhere in between lies what happened. . . . I honestly don't know.
>
> Unfortunately, [we] are talking about five years ago. But what I do firmly remember is [defendant] . . . didn't want to hear any of us. He really was very, very clear that [he was] taking [the case] to trial. I think . . . he was firmly convinced that people were not going to find him guilty of something dealing with marijuana. He really (indiscernible) that. And it appeared that what I remember is that everyone tried to dispel him of that.
>
> There's [sic] laws. We have to obey them. It doesn't matter what happens in the future. This is what is here now. This is what you're facing. And I do think this comes down to buyer's regret.
>
> You know, everything comes back to what hindsight is, 20/20. And . . . we all wish we can wheel back the time, but we can't. As we know the standard as far as incompetency of counsel on a grand scale is pretty low. And the other side of it is, is there other than, [defendant] saying I would have taken the plea, if

8

he had know[n] this[?] From what I remember of this case I don't think he ever would have taken the plea. He was very firm about his position in this case.

And finding both of their testimonies credible, I find them in equipoise with each other. Therefore, I do not find that the burden has been proven in this case and I deny the PCR.

On appeal, defendant raises a single point for our consideration:

THE PCR COURT ERRED IN DENYING DEFENDANT'S PETITION FOR [PCR] SINCE DEFENDANT ESTABLISHED THAT TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO ADVISE DEFENDANT THAT HE COULD ENTER A GUILTY PLEA AND STILL APPEAL THE DENIAL OF THE MOTION TO SUPPRESS, CAUSING DEFENDANT TO NOT BE FULLY INFORMED WHEN HE DECIDED TO PROCEED TO TRIAL.

Our review where the court has conducted an evidentiary hearing on a defendant's PCR petition "is necessarily deferential to [the] PCR court's factual findings based on its review of live witness testimony." State v. Nash, 212 N.J. 518, 540 (2013). Where an evidentiary hearing has been held, we should not disturb "the PCR court's findings that are supported by sufficient credible evidence in the record." State v. Pierre, 223 N.J. 560, 576 (2015) (internal quotation marks omitted). In general, we do not second guess a court's credibility assessment, as long as such fact-findings are supported by "adequate,

9

substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). We review any legal conclusions of the PCR court de novo. Nash, 212 N.J. at 540-41.

In the present matter, however, our review is hampered by the insufficiency of the trial judge's findings of fact and conclusions of law. R. 1:7-4. Under that Rule, the trial court "by an opinion or memorandum decision, either written or oral," must "find the facts and state its conclusions of law . . . in all actions tried without a jury." The trial court must clearly state its factual findings and correlate them with relevant legal conclusions so the parties and appellate courts may be informed of the rationale underlying the decision. See Monte v. Monte, 212 N.J. Super. 557, 564-65 (App. Div. 1986). "In the absence of [adequate] reasons, we are left to conjecture as to what the judge may have had in mind." Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990).

Further, such an omission "imparts to the process an air of capriciousness which does little to foster confidence in the judicial system." Twp. of Parsippany-Troy Hills v. Lisbon Contractors, Inc., 303 N.J. Super. 362, 367 (App. Div. 1997). The "[f]ailure to make explicit findings and clear statements of reasoning constitutes a disservice to the litigants, the attorneys, and the appellate court." Gnall v. Gnall, 222 N.J. 414, 428 (2015) (citations omitted).

10

The PCR judge's "findings" in this case were limited to a cursory summary that both witnesses had "no recollection" of the seminal conversation. Yet, the testimony of both witnesses seems to suggest otherwise. The PCR judge found the testimony of both witnesses credible and therefore, "in equipoise." But the judge failed to explain her reasons for that credibility assessment, by citing, for example, the well-recognized factors set forth in the model jury charge on credibility:

> the appearance and demeanor of the witness;
>
> the manner in which he or she may have testified;
>
> the witness' interest in the outcome of the trial if any;
>
> his or her means of obtaining knowledge of the facts;
>
> the witness' power of discernment meaning his or her judgment - understanding;
>
> his or her ability to reason, observe, recollect and relate;
>
> the possible bias, if any, in favor of the side for whom the witness testified;
>
> the extent to which, if at all, each witness is either corroborated or contradicted, supported or discredited by other evidence;
>
> whether the witness testified with an intent to deceive you;

11

the reasonableness or unreasonableness of the testimony the witness has given;

whether the witness made any inconsistent or contradictory statement;

and any and all other matters in the evidence which serve to support or discredit his or her testimony.

[Model Jury Charges (Criminal), "Criminal Final Charge Parts I and II (General Information to Credibility of Witnesses)" (rev. May 12, 2014).]

Moreover, the judge failed to apply – or even cite – the governing law. See Strickland v. Washington, 466 U.S. 668, 687 (1984) (requiring a defendant seeking PCR on ineffective assistance of counsel grounds to demonstrate: (1) the particular manner in which counsel's performance was deficient; and (2) that the deficiency prejudiced defendant's right to a fair trial); see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-part test in New Jersey). Accordingly, we are in no position to endorse the judge's conclusion that defendant failed to sustain his burden of proof on PCR. See State v. Gaitan, 209 N.J. 339, 350 (2012) (recognizing "a defendant asserting ineffective assistance of counsel on PCR bears the burden of proving his or her right to relief by a preponderance of the evidence").

Under the circumstances presented, therefore, we have no alternative but to reverse the PCR judge's order and remand this matter for further proceedings.

In doing so, we do not suggest a preferred result, but only that the judge fulfill the court's duty to fully address the factual and legal arguments presented in this case. The judge's decision should include detailed findings of fact, correlated to comprehensive conclusions of law that address all issues raised by the parties as guided by the Strickland two-part analysis.

Neither the parties nor the PCR judge should construe our observations as requiring a rehearing, or implying how defendant's PCR application should be decided. If the judge determines the existing record before the PCR court is adequate to dispose of defendant's petition, then the judge should issue an opinion that sets forth more amplified findings of fact, and analyzes those facts pursuant to the governing law.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION