# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2668-24

J.M.F.,

    Plaintiff-Respondent,

v.

K.R.,

    Defendant-Appellant.

_____

> Submitted December 10, 2025 – Decided June 3, 2026
>
> Before Judges Gummer and Vanek.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-2706-25.
>
> Christine M. D'Elia, attorney for appellant.
>
> Respondent has not filed a brief.

PER CURIAM

Defendant K.R. appeals from a final restraining order (FRO), which was entered after a bench trial and pursuant to the Prevention of Domestic Violence

Act (PDVA), N.J.S.A. 2C:25-17 to -35.[1]  Defendant argues the trial court made inconsistent credibility determinations that did not support its finding of a predicate act, failed to apply correctly the law regarding assault and self-defense, and rendered findings that were against the weight of the evidence.  We disagree and affirm.

I.

The scope of our review is limited in an appeal involving an FRO issued after a bench trial.  C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020).  "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'"  Ibid. (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)); see also T.B. v. I.W., 479 N.J. Super. 404, 412 (App. Div. 2024) (same).  "[D]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'"  MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)); see also T.M.S. v. W.C.P.,

---

[1]  We use initials in this domestic-violence action pursuant to Rule 1:38-3(d)(10).

450 N.J. Super. 499, 502 (App. Div. 2017). "[T]he trial judge 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412).

"The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 411-12; Gnall, 222 N.J. at 428. We defer to a trial judge's factual findings unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)); see also C.C., 463 N.J. Super. at 428. We defer to a trial judge's credibility determinations. Gnall, 222 N.J. at 428. We review de novo a trial judge's legal conclusions. C.C., 463 N.J. Super. at 429.

The entry of an FRO under the PDVA requires the trial court to make certain findings pursuant to the two-pronged analysis set forth in Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). Initially, the court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a)

has occurred." Id. at 125 (citation reformatted) (citing N.J.S.A. 2C:25-29(a)). Assault, N.J.S.A. 2C:12-1, and harassment, N.J.S.A. 2C:33-4, are among the predicate acts included in N.J.S.A. 2C:25-19(a). See N.J.S.A. 2C:25-19(a)(2), (13). A person commits a simple assault when he or she "[a]ttempts to cause or purposely, knowingly or recklessly causes bodily injury to another." N.J.S.A. 2C:12-1(a)(1). "Bodily injury" is defined as "physical pain, illness or any impairment of physical condition." N.J.S.A. 2C:11-1(a). "A simple assault requires the intent to cause bodily injury." R.G. v. R.G., 449 N.J. Super. 208, 228 (App. Div. 2017).

As to the second prong of the Silver analysis, the judge must determine whether a restraining order is necessary to protect the plaintiff from immediate harm or further acts of violence. Silver, 387 N.J. Super. at 127; see also D.M.R. v. M.K.G., 467 N.J. Super. 308, 322 (App. Div. 2021) (finding "the judge must determine whether a restraining order is necessary to protect the plaintiff from future danger or threats of violence"). That determination must be made based on a totality-of-the-circumstances analysis. See C.C., 463 N.J. Super. at 436 (explaining "the credible evidence in the record support[ed] the [trial] judge's decision that the FRO was necessary to protect plaintiff from immediate danger or future abuse" where "plaintiff's testimony established the totality of

4

defendant's conduct placed her in fear"); see also N.J.S.A. 2C:25-29(b) (stating "the court shall grant any relief necessary to prevent further abuse").

II.

Plaintiff and defendant were in a ten-year dating relationship that ended several years before the March 8, 2025 incident at issue. They have a child, who was twelve-years old at the time of trial. The parties and their child previously resided in Pennsylvania. In a February 12, 2013 temporary custody order, a Pennsylvania court awarded joint legal custody of the child to the parties with plaintiff as the parent of primary residence. The court ordered that the "[f]ather SHALL NOT enter [the m]other's home" and the "[m]other shall be permitted to relocate particularly to South Jersey . . . ." The court required the parties to communicate by text messaging only and limited the locations where defendant could exercise parenting time. Plaintiff and the child moved to New Jersey; defendant remained in Pennsylvania. According to plaintiff, she moved to New Jersey because she and defendant would "get into it quite often" and did not "get along." Pursuant to a custody agreement, defendant was permitted to pick the child up at plaintiff's New Jersey apartment for his parenting time.

Plaintiff obtained a temporary restraining order against defendant on March 10, 2025. In her domestic-violence complaint, plaintiff alleged that on

5

the morning of March 8, 2025, while "the parties were arguing at [plaintiff's] residence," defendant "pushed [plaintiff's] face with extreme force and made [plaintiff] fall and hit their head." Plaintiff asserted she "received bruises and two herniated discs" and was taken by ambulance to a hospital, where she was admitted for treatment. She also alleged defendant would walk into her home when dropping their child off and had been "physically violent" in the past, hitting and pushing her several times. On the complaint, plaintiff identified assault and harassment as the predicate acts at issue.

On March 17, 2025, the court conducted a trial on plaintiff's domestic-violence complaint. The parties were self-represented. Both testified.

During the week of March 8, 2025, defendant traveled between his home and plaintiff's apartment to drive their child to school while plaintiff's car was being repaired. According to plaintiff, they began to argue "and it got physical." She asserted defendant caused her to suffer injuries, including two disk herniations, bruises, and a black eye. She submitted her March 8, 2025 hospital records. She denied ever having a prior diagnostic test that showed herniations of those two disks. Plaintiff testified she did not "want to be in contact or around [defendant] at all," "him near [her] at all," or "any reoccurrence of this at all." She acknowledged defendant had a right to parenting time. She explained she

"just want[ed] to have a court paper saying . . . [they did not] have to talk." She testified an FRO was necessary to prevent future acts of domestic violence because they "ha[d] a history."

Defendant had a different version of the events. When the court asked him about "the allegation that [he] pushed her face," defendant testified:

> I wasn't looking. [Plaintiff] threw a glass ashtray. I don't know if it hit me, or pieces of it hit me. . . .
>
> But anyway, she ended up head-butting me. I pushed her back. She took a step back, landed on her butt on the step up to the living room. She got right back up, got in my face, head-butted me again. And I tried to push her away. She grabbed my arm, pulled me to the ground, started kicking me. I pulled the phone out of my pocket as fast as I could, dialed 9-1-1 and got out of the house.

He asserted he had experienced a concussion and submitted records from his March 12, 2025 hospital visit. He testified about other incidents with plaintiff, asserting she had been the aggressor. In response, plaintiff admitted she had "throw[n] an ashtray in [her] house and broke it" but denied head-butting defendant.

At the conclusion of this hearing, the court granted plaintiff's request for an FRO. The court found plaintiff had proven assault, specifically "a forcible push to the face," as a predicate act based on her testimony and medical records.

A-2668-24

The court expressly found a "mutual fight" had not occurred between the parties. The court also found that the FRO was needed to prevent future acts of domestic violence based on the March 8, 2025 domestic-violence incident, the prior history between the litigants, and the fact that plaintiff had moved to New Jersey to separate herself from defendant. The court found both parties to be credible to a certain extent but concluded plaintiff "was telling . . . a more consistent story." The court entered the FRO on March 17, 2025, and an amended FRO on June 4, 2025, to correct a typographical error.

Defendant faults the court for making inconsistent credibility determinations. Although the court made positive comments about the credibility of both parties, it ultimately concluded plaintiff "was telling . . . a more consistent story." Considering the deferential standard we apply to a trial court's credibility findings and the record before the court, we perceive no basis to reject that determination. Gnall, 222 N.J. at 428.

Defendant also contends the court's factual findings were not supported and were against the weight of the evidence and the court failed to apply correctly the law regarding assault and self-defense. We disagree. Plaintiff testified the March 8 argument "got physical" and that defendant had caused her to suffer two disk herniations and a black eye. Plaintiff submitted hospital

records from the day of the incident. When asked about the allegation he had "pushed [plaintiff's] face," defendant admitted he had pushed her. That evidence supports the court's conclusions "there was a forcible push to the face," plaintiff had "an injury to her back," and plaintiff had proven "assault . . . as a predicate act."

Unlike the trial court in N.T.B. v. D.D.B., 442, N.J. Super. 205, 224 (App. Div. 2015), which did not address the possible justifications for the defendant's striking of the plaintiff, the court in this case expressly rejected any contention that the March 8 incident was a "mutual fight." In testimony the court found credible, plaintiff denied head-butting defendant. Defendant produced hospital records not from March 8, like plaintiff, but from a hospital visit that occurred days after the March 8 incident and after plaintiff had obtained the March 10 temporary restraining order. Although both parties testified plaintiff had thrown an ashtray, neither of them said she had thrown it at defendant. On that record, we perceive no basis to overturn the court's finding the March 8 incident was not a "mutual fight" or its conclusion plaintiff had proven assault as a predicate act.

Defendant also challenges the court's determination under the second Silver prong. But the evidence nevertheless supports the finding that an FRO

9

was necessary considering the March 8 incident, both parties' testimony about their history and past incidents, and the likelihood of future contact between them given their ongoing co-parenting relationship.

Because the court's findings were supported by adequate, substantial evidence, including testimony the court found credible, we affirm.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

10