**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1158-15T2

JOSE RIVERA,

    Plaintiff-Appellant,

v.

MARIA RIVERA-TORRES,

    Defendant-Respondent.

_____

        Submitted December 20, 2016 — Decided May 5, 2017

        Before Judges Kennedy and Gilson.

        On appeal from the Superior Court of New
        Jersey, Family Part, Middlesex County, Docket
        No. FM-12-2172-11.

        Menar & Menar, attorneys for appellant (Raul
        E. Menar, on the brief).

        Nemergut & Duff, attorneys for respondent
        (Howard Duff, on the brief).

PER CURIAM

    Plaintiff Jose Rivera appeals from an October 9, 2015 order

that denied his post-divorce-judgment motion to terminate his

alimony obligation, but granted him a reduction in his alimony

obligation and fixed July 31, 2017, as the date when his alimony obligation will terminate. We affirm.

I

Plaintiff and defendant Maria Rivera-Torres married in 1986, and divorced twenty-five years later in 2012. They have five adult children who are emancipated. Following a trial, a Final Judgment of Divorce was entered on March 2, 2012. Under that judgment, plaintiff was ordered to pay defendant permanent alimony of $125 per week.

On February 24, 2015, plaintiff filed a motion seeking to terminate his alimony obligation, asserting that he had retired. Alternatively, plaintiff sought to terminate alimony contending that since 2007, defendant had been cohabitating with another individual, S.D.

The Family Part ordered discovery and then conducted a plenary hearing. The testimony at the hearing established that at the time of the divorce, plaintiff worked as a "driver/warehouse man," where he earned an average of $33,000 per year. In July 2012, six months after the divorce, plaintiff retired at the age of sixty-eight. Following his retirement, plaintiff's sole source of income was Social Security, which provides $1754 a month. With his monthly expenses totaling approximately $2454, plaintiff began

incurring arrears. By October 2015, plaintiff owed defendant $15,625 in alimony arrears.

At the time of the plenary hearing, defendant was sixty years old and was not yet eligible to collect Social Security. She did not work and she had no other source of income. Since 2007, she has lived with S.D., and S.D. pays most of the expenses to maintain the home. The Puerto Rican Association helps pay some of the utilities in the home. Defendant testified that the issue of her living with S.D. had been addressed at the divorce trial, and the court determined that she was not romantically involved with S.D. At the hearing in 2015, S.D. testified that he was not romantically involved with defendant and he assists her out of sheer generosity.

After considering the testimony and evidence submitted at the hearing, the Family Part issued an order on October 9, 2015. The court found plaintiff's testimony incredible. In contrast, the court found the testimony of both defendant and S.D. to be credible. The court then (1) denied plaintiff's request to terminate alimony; (2) found that plaintiff had shown a change of circumstances and, therefore, reduced his alimony obligation from $125 per week to $85 per week effective February 28, 2015; and (3) directed that plaintiff's alimony obligation will terminate on July 31, 2017, which is the date when defendant will be eligible for Social Security benefits because she will have reached the age

of sixty-two. The court also rejected plaintiff's assertion that defendant was cohabitating with S.D., concluding that that issue had been resolved when the parties were divorced in 2012, and "there [has been] no change in circumstances whatsoever[.]" Thus, the court found that while defendant and S.D. were sharing a home, they were not in a romantic relationship.

II

On appeal, plaintiff makes four arguments: (1) the Family Part erred in failing to apply the rebuttable presumption of termination upon retirement set forth in N.J.S.A. 2A:34-23(j)(1); (2) the September 10, 2014 amendment to N.J.S.A. 2A:34-23 should apply retroactively to this case because the judgment of divorce was entered after a trial and not as a result of an agreement; (3) the Family Part abused its discretion in not terminating alimony; and (4) the Family Part abused its discretion in modifying the alimony obligation as of the date of the filing of the motion, as opposed to the date when plaintiff retired. We are not persuaded by any of these arguments and we affirm.

We begin our analysis with our standard of review and then evaluate each of plaintiff's arguments. In reviewing an order entered after a fact-finding hearing, we defer to factual findings "supported by adequate, substantial, credible evidence." Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015) (quoting

<u>Gnall v. Gnall</u>, 222 <u>N.J.</u> 414, 428 (2015)).  Thus, reversal is proper only when the trial court's factual findings are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." <u>Ibid.</u> (quoting <u>Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.</u>, 65 <u>N.J.</u> 474, 484 (1974)).  We review de novo a trial court's determinations on questions of law.  <u>Reese v. Weis</u>, 430 <u>N.J. Super.</u> 552, 568 (App. Div. 2013).

Plaintiff's first two arguments are based on a 2014 amendment to the statute governing modifications of an existing alimony order.  <u>L.</u> 2014, <u>c.</u> 42, § 1.  This statutory interpretation question is a legal issue subject to our plenary review.  <u>Reese</u>, <u>supra</u>, 430 <u>N.J. Super.</u> at 568.

The authority to modify an existing alimony order is primarily governed by statute.  <u>Landers v. Landers</u>, 444 <u>N.J. Super.</u> 315, 320 (App. Div. 2016).  The preamble to <u>N.J.S.A.</u> 2A:34-23, states in pertinent part:

> [A]fter judgment of divorce . . . the court may make such order as to the alimony or maintenance of the parties, . . . as the circumstances of the parties and the nature of the case shall render fit, reasonable and just . . . Orders so made may be revised and altered by the court from time to time as circumstance may require.

Before September 2014, when the statute was amended, "[o]ur courts [had] interpreted this statute to require a party who seeks modification to prove 'changed circumstances[.]'" Spangenberg, supra, 442 N.J. Super. at 536 (third alteration in original) (quoting Lepis v. Lepis, 83 N.J. 139, 157 (1980)). Thus, a party moving for modification had to "demonstrate that changed circumstances have substantially impaired the ability to support himself or herself." Lepis, supra, 83 N.J. at 157. It was recognized that the reduction of income resulting from a good faith retirement was a change of circumstances warranting a review of the financial situation facing the parties to evaluate a pre-existing alimony award. Landers, supra, 444 N.J. Super. at 320.

Effective September 10, 2014, the Legislature amended N.J.S.A. 2A:34-23 to add a new subsection (j). Subsection (j) lists objective considerations a judge must examine and weigh when reviewing an obligor's request to modify or terminate alimony when an obligor retires. L. 2014, c. 42, § 1. The 2014 amendment addressed when alimony can be modified or terminated in three different scenarios. For example, subsection (j)(1) created "a rebuttable presumption that alimony shall terminate upon the obligor spouse or partner attaining full retirement age." N.J.S.A. 2A:34-23(j)(1). Subsection (j)(2) addresses the circumstances when an obligor "seeks to retire prior to attaining the full

retirement age as defined in" the statute.  N.J.S.A. 2A:34-23(j)(2).  Subsection (j)(3) applies "[w]hen a retirement application is filed in cases in which there is an existing final alimony order or enforceable written agreement established prior to the effective date of this [amendment.]"  N.J.S.A. 2A:34-23(j)(3).

Here, plaintiff argues that subsection (j)(1) should have applied because he filed his motion in 2015.  Alternatively, he argues that subsection (j)(1) should have applied because his alimony obligation was imposed as a result of a trial, rather than a negotiated settlement.  We have already rejected these arguments. Landers, supra, 444 N.J. Super. at 323.

In Landers, we reviewed the plain meaning of the words of the statute and explained, "subsection (j) distinguishes alimony orders executed prior to the amendment's effective date and those executed afterwards."  Ibid.  (citing N.J.S.A. 2A:34-23(j)(1) and (3)).  We went on to explain:

> Therefore, this unambiguous legislative directive governs a court's examination of alimony modification requests arising when an obligor retires, depending on the original date alimony is awarded.
>
> Subsection (j)(3) applies "[w]hen a retirement application is filed in cases in which there is an existing final alimony order or enforceable written agreement established prior to the effective date of this act

. . . . " <u>N.J.S.A.</u> 2A:34-23(j)(3) (emphasis added). This purposeful design demonstrates an intent to address such circumstances somewhat differently than orders entered following the enactment of the statutory amendments.

[<u>Ibid.</u> (alterations in original).]

Accordingly, plaintiff is incorrect when he argues that the court here should have applied subsection (j)(1) and the rebuttable presumption. Plaintiff is also incorrect in arguing that there is a distinction between an order of final judgment entered after a trial, as compared to an order of final judgment entered because of an agreement between the parties. The statute expressly addresses either "an existing final alimony order or enforceable written agreement." <u>N.J.S.A.</u> 2A:34-23(j)(3); <u>see</u> <u>Lozano v. Frank DeLuca Const.</u>, 178 <u>N.J.</u> 513, 522 (2004) (explaining that courts should look at the text of a statute, and if its language is clear and unambiguous, the plain language should govern the statute's interpretation).

Alternatively, plaintiff argues that the trial court abused its discretion in concluding that alimony was still warranted, despite plaintiff's changed circumstances. Plaintiff argues that the trial court made specific findings not supported by the record, including that defendant no longer has the ability to work. Plaintiff asserts that since defendant was never found to be

disabled, never presented evidence of poor physical or emotional health, and is of working age, her unemployment can only be found to be voluntary. Moreover, the court abused its discretion in failing to conduct the requisite analysis under N.J.S.A. 2A:34-23(j)(3).

N.J.S.A. 2A:34-23(j)(3) states that:

> When a retirement application is filed in cases in which there is an existing final alimony order or enforceable written agreement established prior to the effective date of this act, the obligor's reaching full retirement age as defined in this section shall be deemed a good faith retirement age. Upon application by the obligor to modify or terminate alimony, both the obligor's application to the court for modification or termination of alimony and the obligee's response to the application shall be accompanied by current Case Information Statements or other relevant documents as required by the Rules of Court, as well as the Case Information Statements or other documents from the date of entry of the original alimony award and from the date of any subsequent modification. In making its determination, the court shall consider the ability of the obligee to have saved adequately for retirement as well as the following factors in order to determine whether the obligor, by a preponderance of the evidence, has demonstrated that modification or termination of alimony is appropriate:
>
> > (a) The age and health of the parties at the time of the application;
> >
> > (b) The obligor's field of employment and the generally

accepted age of retirement for those in that field;

(c) The age when the obligor becomes eligible for retirement at the obligor's place of employment, including mandatory retirement dates or the dates upon which continued employment would no longer increase retirement benefits;

(d) The obligor's motives in retiring, including any pressures to retire applied by the obligor's employer or incentive plans offered by the obligor's employer;

(e) The reasonable expectations of the parties regarding retirement during the marriage or civil union and at the time of the divorce or dissolution;

(f) The ability of the obligor to maintain support payments following retirement, including whether the obligor will continue to be employed part-time or work reduced hours;

(g) The obligee's level of financial independence and the financial impact of the obligor's retirement upon the obligee; and

(h) Any other relevant factors affecting the parties' respective financial positions.

Here, the Family Part judge did not look to <u>N.J.S.A.</u> 2A:34-23(j)(3) for his analysis, instead incorrectly applying the factors under <u>N.J.S.A</u> 2A:34-23(b). Nevertheless, the findings

associated with the court's N.J.S.A. 2A:34-23(b) analysis overlap and support the denial of plaintiff's application for termination of his alimony obligations under N.J.S.A. 2A:34-23(j)(3).

The court adequately discussed factors (a) through (d), as they relate to the parties' ages, health, and plaintiff's good faith motivations for retirement. See N.J.S.A. 2A:34-23(j)(3)(a) to (d). At the time of the hearing, plaintiff was seventy years old, whereas defendant was sixty years old, and although neither party provided medical evidence demonstrating that they were suffering from poor physical or emotional health, both testified that they were declining in health.

Next, the court here made sufficient findings, supported by credible evidence in the record, to support a denial of plaintiff's application for termination of alimony obligations under subsection (j)(3) (e) to (h) of N.J.S.A. 2A:34-23. For example, the court found plaintiff is in the superior economic position. Defendant does not possess any marketable skills to earn income and could not obtain Social Security benefits at the time of the hearing. Defendant also did not have a driver's license or own a car, and, therefore, she was severely limited in her prospective employment. Further, as the court emphasized, defendant was almost entirely dependent on S.D. for housing and other necessities.

Finally, the court credited defendant's testimony that she has not been able to save for her own retirement.

Consequently, there was sufficient substantial, credible evidence in the record to support the court's decision to deny plaintiff's request to terminate his alimony obligation. Gnall, supra, 222 N.J. at 428.

We also reject plaintiff's argument that the court improperly considered his liquidated 401(k) account. While the trial court mentioned that plaintiff liquidated the proceeds of his 401(k) account, it did so primarily in discussing plaintiff's arrears, not his ability to continue his obligation in the future. Accordingly, we discern no violation of N.J.S.A. 2A:34-23(j)(4). That subsection directs: "The assets distributed between the parties at the time of the entry of a final order of divorce or dissolution of a civil union shall not be considered by the court for purposes of determining the obligor's ability to pay alimony following retirement." Ibid.

Finally, plaintiff argues that the court abused its discretion in using the date plaintiff filed his motion, rather than the date of his retirement, as the date to modify his alimony obligation. Subsection (j)(3), which governs plaintiff's application, does not expressly state when alimony shall be modified or terminated. Nevertheless, as we have already

explained, that subsection addresses an application that is filed in a case with an existing alimony order that predates the effective date of the 2014 amendment. Subsection (j)(1), however, gives the court discretion to set a date different from the date of retirement. In that regard, the statute provides: "The court may set a different alimony termination date for good cause shown based on specific written findings of fact and conclusions of law." N.J.S.A. 2A:34-23(j)(1). This is also true of alimony modifications that result from retirement.

Here, following a plenary hearing, the court found that plaintiff's alimony obligation should be reduced as of the date that he filed his application. In making that finding, the court noted that plaintiff had incurred over $15,600 in arrears and he had not offered any justification for why he waited to make his application. Accordingly, the court reasoned that it would be unfair to reduce retroactively the arrears. We discern no abuse of discretion in that decision. Accordingly, good cause existed to use the motion date as the date of modification.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1158-15T2