# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0430-23

Q.R.B.,[1]

    Plaintiff-Respondent,

v.

E.Z.L.,

    Defendant-Appellant.

_____

Submitted October 7, 2024 – Decided October 16, 2024

Before Judges Sabatino and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-0180-24.

Law Office of Louis Guzzo, attorneys for appellant (Eric R. Foley, on the brief).

South Jersey Legal Services, Inc., attorneys for respondent (John Pendergast, Cheryl Turk Waraas, and Kenneth Goldman, on the brief).

---

[1] We use initials in this domestic violence case to protect the identities of the parties. R. 1:38-3(b)(12).

PER CURIAM

In this domestic violence case, defendant E.Z.L. appeals the trial court's entry of a final restraining order ("FRO") against him in favor of plaintiff Q.R.B., who is the co-parent of their children. As we will describe, defendant contends the trial court's decision critically omits findings as to whether he committed any of the predicate acts charged by plaintiff. He further argues the court failed to address sufficiently whether plaintiff established a necessity for restraints as required under the second prong of Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006). For the reasons that follow, we remand this matter to the Family Part for additional findings and proceedings.

Because the record may be amplified or corrected on remand, we need not discuss the facts and procedural history comprehensively. The following short recitation will suffice.

The parties, who had a dating and cohabiting relationship with one another, are the parents of two minor children. They each lived in Florida, eventually in separate residences, until May 2023, when plaintiff moved with the children to New Jersey. She relocated here without notice to or the consent of defendant, who remained in Florida.

2

The parties had many confrontations over matters concerning the children. They have exchanged harsh communications with one another, as reflected in voluminous text message exchanges between May through July 2023, as well as a video recording from 2021 and an audio recording from 2023 of their arguments. Plaintiff contends defendant has threatened her with physical harm, stemming back to the incident in 2021 that she audio recorded.

Defendant denies improperly threatening plaintiff, maintaining that plaintiff induced his stern communications by thwarting his parenting time with the children and concealing their whereabouts. In early June 2023, defendant obtained an order from the Florida court directing that the children not be removed from that state, although they had already moved to New Jersey by that point. Shortly thereafter, plaintiff similarly moved in the Family Part of our court for custody.

On July 12, 2023, plaintiff applied for and obtained from the Family Part a temporary restraining order ("TRO") against defendant. She alleged the following predicate act in her domestic violence complaint:

> Parties share two kids together. Pla states that def has been sending harassing text messages and also by social media. On Saturday def texted "bring the kids back to Florida. You stole my kids from me. You are breaking the law you will find out the hard way." Def went [to] Facebook live and was harassing pla and was

3

intimidating pla. Def's mother also post[ed] things on Facebook. Def threated the pla to put a private investigator [to follow her]. Pla fears for her safety and wants the def to stop harassing her.

On August 11, 2023, plaintiff amended her complaint to insert additional predicate acts, and an amended TRO was issued. The amendment to the predicate act portion is as follows:

> The defendant and I were living together in Florida with our two children . . . until June 2022. At that time, the defendant moved out of our home and began living together with his new girlfriend. Both before and after he moved out, the Defendant would constantly threaten to have me evicted from my home because, although we had both contributed to the down payment, only his name was on the deed.
>
> In March 2023, our [child], who was 5 years old at the time, had gotten in trouble at school. When the Defendant heard about it, he came over to the house and began screaming at [the child]. He then smacked [the child] hard in the face. I yelled at him to stop and not hit [the child]. The Defendant replied that he could do whatever he wanted because he was [the child's] father. He then began to stare me down to intimidate me so I would stop standing up for my [child]. After the Defendant left, I comforted [the child] and saw that [the child] had a large red mark on [their] face from where the Defendant had hit [the child].
>
> In May 2023, the defendant watched our [child] for a day because [the child] had been kicked out of school for bad behavior. I needed the Defendant to watch [the child] until I was done with work. Normally, the Defendant would bring [the child] back to my home by

4

6 pm. When [the child] wasn't home by 6 pm, I contacted the Defendant, who said he was running late and would have [the child] home in an hour or so. However, the Defendant didn't bring [the child] back until 1 am. When he did return [the child], the defendant was visibly intoxicated, slurring his words and stumbling. After the defendant left, I asked my [child] if the defendant fed [the child] dinner, and [the child] said no. All of the problems that I and now my [child] were having with the Defendant convinced me that my kids and I had to move back to New Jersey near my family to be safe. We therefore moved back to New Jersey in May 2023.

In addition to these alleged predicate acts, plaintiff claimed in the "prior history of domestic violence" portion of her complaint that, during an argument two years earlier in 2021, defendant spit on her and pointed a gun at her. Plaintiff recorded the encounter. Additionally, plaintiff listed an April 2023 incident in the "prior history" portion claiming that defendant choked her.

The case was tried in the Family Part in September 2023. Both parties were represented by counsel and were the sole testifying witnesses. Plaintiff's evidence included the 2023 text messages and the recording of the 2021 incident.[2] Plaintiff also described that during the 2021 incident defendant threatened to throw a television at her, although that allegation was not specified

_____

[2] We have reviewed the recording, which was furnished as part of the record on appeal.

A-0430-23

as a predicate act or as part of the "prior history" in her amended complaint. Defendant denied physically threatening or harming plaintiff, asserting he had merely warned plaintiff he would resort to legal action to see the children. Defense counsel moved mid-trial for a directed verdict, which the judge denied.

At the conclusion of the trial, the judge granted plaintiff an FRO. The judge issued a brief oral opinion. In that ruling, the judge focused on the prior history of domestic abuse in considering the predicate acts. In particular, the judge stated he "has a special concern about the choking and the gun issue." The judge further stated, "[t]he Court has objective evidence here of a reference to a gun, a reference to a choking, and the Court is satisfied that those issues occurred." The judge ruled:

> the Court finds that, one, the predicate act so-to-speak is harassment and some of that communication goes overboard, for an example, the threat of throwing the TV at the plaintiff is a substantial threat. That to me is at least harassment, if not terroristic threats. But then the gun issue, another terroristic threat. And the choking incident, at least a minimal of some type of assault. So, we have predicate acts. We have predicate acts that shows a need for the restraining order.

Defendant appeals. His central argument is that the trial court did not make appropriate findings that defendant committed actionable predicate acts as listed in the complaint by a preponderance of the evidence. Instead, the court

A-0430-23

dwelled upon the 2021 incident and April 2023 incident, which were both identified only as "prior history" in plaintiff's complaint and not listed as predicate acts. Defendant argues plaintiff and her counsel failed to give him the requisite notice before trial that they would seek to have the 2021 incident treated as a predicate act for an FRO in 2023. Defendant further contends the court made inadequate findings about the necessity for future restraints.

The applicable legal standards are well settled. The entry of an FRO under The Prevention of Domestic Violence Act of 1991, N.J.S.A. 2C:25-17 to -35 ("the Act"), requires the trial court to make certain findings, pursuant to a two-step analysis. Silver, 387 N.J. Super. at 125-27.

First, the court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. The court should make this determination "in light of the previous history of violence between the parties." Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 402 (1998)). Here, plaintiff alleged predicate acts of harassment and terroristic threats in her complaint. See N.J.S.A. 2C:33-4(a) (defining harassment); N.J.S.A. 2C:12-3 (defining terroristic threats).

A-0430-23

If a court finds a predicate act occurred that satisfies N.J.S.A. 2C:25-19(a), "the judge must determine whether a restraining order is necessary to protect the plaintiff from future danger or threats of violence." D.M.R. v. M.K.G., 467 N.J. Super. 308, 322 (App. Div. 2021). Even though "this second determination—whether a domestic violence restraining order should be issued––is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29a(1) to -29a(6), to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127; see also N.J.S.A. 2C:25-29(b) ("[T]he court shall grant any relief necessary to prevent further abuse."). N.J.S.A. 2C:25-29(a) instructs "[t]he court shall consider but not be limited to" six factors, including the previous history of domestic violence between the parties. Further, "whether the victim fears the defendant" is an additional factor the trial court may consider. G.M. v. C.V., 453 N.J. Super. 1, 13 (App. Div. 2018) (quoting Carfagno v. Carfagno, 288 N.J. Super. 424, 435 (Ch. Div. 1995)). That second-prong inquiry is necessarily fact specific. Silver, 387 N.J. Super. at 127-28 (remanding an FRO appeal for additional fact finding).

Our case law also mandates that when cases under the Act are tried, a defendant is entitled to fair notice of the allegations that plaintiff is relying upon

to establish the predicate acts. H.E.S. v. J.C.S., 175 N.J. 309, 321-23 (2003).

We also are mindful of the scope of review. The Family Part's findings are binding on appeal, "when supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 411-12. "[This court] defer[s] to the credibility determinations made by the trial court because the trial judge 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412); see also S.D. v. M.J.R., 415 N.J. Super. 417, 429 (App. Div. 2010).

Having reviewed defendant's arguments in light of these legal requirements, and also having given due deference to the role of the trial court as fact-finder, we are constrained to vacate the FRO without prejudice, reinstate the TRO, and remand for additional findings or proceedings.

Defendant correctly spotlights that the trial court did not make any findings concerning the alleged predicate acts, and instead focused on the prior history of domestic abuse. We reject plaintiff's argument that defendant implicitly waived the notice he was entitled to receive under H.E.S., 175 N.J. at 321-23.

In addition, the court's findings regarding the necessity of restraints under

9

the second prong of <u>Silver</u> are too sparse and conclusory. The court did not discuss the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6) and apply them to any proven current predicate acts.

In sum, the trial court's findings are inadequate as to both prongs of the two-prong <u>Silver</u> test. We decline to take original jurisdiction and attempt to evaluate the legal sufficiency of the evidence ourselves. Instead, we must remand this matter to the Family Part for that purpose. The Family Part judge[3] shall have the discretion to adduce updated and clarifying proofs, as may be warranted. In the meantime, the TRO is reinstated without prejudice to ensuing developments. We do not retain jurisdiction.

Vacated and remanded. The amended TRO dated August 11, 2023, is reinstated. The trial court shall conduct a case management conference with counsel within twenty days to address the remand.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] Given that the trial judge may be committed to his FRO ruling, it is prudent to reassign this case to a different judge who can approach the case with a fresh perspective. <u>See</u> <u>Freedman v. Freedman</u>, 474 N.J. Super. 291, 308 (App. Div. 2023) (remanding a matter to a different judge, as the same judge "may have a commitment to her prior findings").

A-0430-23