# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0146-24

R.M.K.,

    Plaintiff-Respondent,

v.

S.S.L.,

    Defendant-Appellant.

_____

        Submitted September 9, 2025 – Decided September 26, 2025

        Before Judges Gilson and Perez Friscia.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FV-15-2481-24.

        S.S.L., appellant pro se.

        R.M.K., respondent pro se.

PER CURIAM

    Defendant appeals from a final restraining order (FRO) entered under the

Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35, based

on a predicate act of harassment, N.J.S.A. 2C:33-4. We affirm because the trial court's factual findings are supported by substantial credible evidence, and it correctly applied the law.[1]

## I.

We discern the facts from the record developed at a one-day trial conducted on July 30, 2024. Plaintiff was represented by counsel and defendant represented herself. Both parties testified and no other witnesses were called. The parties also submitted several exhibits into evidence.

The parties had been in a relationship for over twenty years, and they had two children, daughters who were born in 2012 and 2018. They had lived together for many years, but several years ago they separated. In 2022, defendant obtained an FRO against plaintiff and since that time defendant has repeatedly claimed that plaintiff violated her FRO.

Plaintiff's claims against defendant relate to events that occurred during a weekend in June 2024, when he had parenting time with his daughters. Plaintiff testified that over the course of approximately thirty-six hours defendant had called the police three times. To put those calls in context, plaintiff explained

---

[1] We use initials to protect the confidentiality of the participants in this domestic violence matter. R. 1:38-3(d)(10).

A-0146-24

that just a few days before his parenting time, he had dismissed a temporary restraining order against defendant and had entered a consent order containing civil restraints that prohibited defendant from harassing him.

The evidence showed that defendant first called the police approximately an hour after plaintiff had picked up the daughters at 6:00 p.m. on June 21, 2024. Defendant had listened to a phone conversation between plaintiff and the oldest daughter, who was then twelve years old. Defendant called the police alleging that plaintiff had violated her FRO by making negative comments about her.

The second call to the police was made at approximately 2:00 a.m. on June 22, 2024. Plaintiff explained that the police called him sometime after 2:00 a.m. while he was sleeping. The police informed plaintiff that defendant had called claiming that he was communicating with her by sending her text messages. Plaintiff told the police that he was not texting with defendant and the officers then spoke with plaintiff's mother, who apparently explained that she had been texting with defendant.

The third call to the police was made later on June 22, 2024. Plaintiff testified that two police officers came to his apartment to conduct a welfare check on the children. Defendant acknowledged that she had called the police to conduct a welfare check because she had spoken with her daughter who was

3

upset, the conversation had abruptly ended, and when she tried to contact plaintiff through a parenting app, he did not immediately respond.

Plaintiff also testified that defendant had a history of calling the police and claiming that he had violated the FRO. Plaintiff stated that he was concerned that defendant was trying to get him arrested and he feared that she would continue to use her FRO to try to get him arrested. He gave several examples of how he felt defendant was using her FRO as a weapon against him. One example involved plaintiff notifying defendant that he was going to a certain bar on a particular evening. Plaintiff explained that under defendant's FRO, he was to give her such notice so that they would not come into contact. Defendant admitted on cross-examination, however, that after plaintiff had given her notice, she had gone to the bar the same night, forcing plaintiff to leave so that he could avoid being charged with a violation of defendant's FRO. Defendant further admitted on cross-examination, that on another occasion she had asked a woman to set plaintiff up during a date so that he would violate defendant's FRO.

After hearing the testimony from both parties, and after considering the exhibits that had been entered into evidence, the trial court made oral findings

4

A-0146-24

of facts and conclusions of law on the record. Thereafter, the court submitted an October 3, 2024 letter amplifying its decision.

The trial court found plaintiff's testimony to be credible and defendant's testimony to be incredible. The court then found that defendant had no valid justification for contacting the police on any of the three occasions and that she made the contacts with the purpose of harassing plaintiff. Specifically, the trial court found that defendant had violated subsection (a) of N.J.S.A. 2C:33-4.

The trial court also found that plaintiff needed an FRO to protect him against future acts of harassment. In that regard, the trial court determined that defendant had engaged in a series of prior misuses of her FRO and that she was using that FRO to harass plaintiff.

Finally, the court found that defendant had engaged in a series of actions that demonstrated that she was trying to coercively control plaintiff in violation of the Act. See N.J.S.A. 2C:25-29(a)(7)(e). The trial court reasoned that defendant's reports to the police were her attempts to try to control plaintiff by setting him up so that it appeared he was violating her FRO.

## II.

On appeal, defendant makes two arguments, contending that the trial court erred in (1) allowing hearsay evidence to be introduced by plaintiff; and (2)

A-0146-24

making erroneous findings of fact that were not supported by the record.  The record and law do not support either of defendant's arguments.

Our scope of review of an FRO is limited.  C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020).  We accord substantial deference to family courts' findings of fact because of their special expertise in family matters.  N.J. Div. of Youth and Fam. Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)).  That deference is particularly strong when the evidence is largely testimonial and rests on a court's credibility findings.  See Gnall v. Gnall, 222 N.J. 414, 428 (2015).  We will "not disturb the factual findings and legal conclusions of the trial [court] unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."  Balducci v. Cige, 456 N.J. Super. 219, 233 (App. Div. 2018) (alteration in original) (quoting In re Forfeiture of Pers. Weapons & Firearms Identification Card Belonging to F.M., 225 N.J. 487, 506 (2016)).

When determining whether to grant an FRO under the Act, a judge must undertake a two-part analysis.  Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006).  "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the

predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. Second, the judge must determine whether a restraining order is necessary to protect the plaintiff from immediate harm or further acts of violence. Id. at 126-27.

The judge in this matter determined that defendant committed the predicate act of harassment. Under N.J.S.A. 2C:33-4(a),

> a person commits a petty disorderly persons offense [of harassment,] if, with purpose to harass another, he [or she]:
>
> a. Makes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm[.]

A "'finding of a purpose to harass may be inferred from the evidence presented,' and [the Supreme Court has] observed that '[c]ommon sense and experience may inform that determination.'" J.D. v. M.D.F., 207 N.J. 458, 477 (2011) (alteration in original) (quoting State v. Hoffman, 149 N.J. 564, 577 (1997)).

Having reviewed the record, we conclude that there was sufficient credible evidence supporting the trial court's determination that defendant committed the predicate act of harassment under subsection (a). The trial court found that defendant had contacted the police three times in a relatively short

7

period of time and that there was no good reason why defendant was contacting the police to claim that plaintiff was violating her FRO. In that regard, the trial court expressly rejected defendant's claim that she reasonably believed that plaintiff was violating her FRO. Instead, the trial court found that defendant was contacting the police without justification and with the purpose of harassing plaintiff. Those findings are supported by the substantial credible evidence presented at the trial. Moreover, those findings satisfy the elements of harassment under subsection (a). See N.J.S.A. 2C:33-4(a).

We are also satisfied that there was credible evidence supporting the trial court's finding that plaintiff needed a restraining order. The court credited plaintiff's testimony concerning several prior instances where defendant had misused her FRO in an improper attempt to set up plaintiff and to coercively control him. Accordingly, the record demonstrates that the FRO in favor of plaintiff was necessary to protect him from further abuses by defendant and there was sufficient evidence in the record supporting both prongs needed for an FRO. See Silver, 387 N.J. Super. at 125-27.

Defendant's arguments to the contrary are not persuasive. First, defendant argues that the trial court erred by allowing plaintiff to introduce hearsay evidence. In that regard, defendant points to P2 through P5 and contends that

those exhibits contained out-of-court statements made by people who were not present in court to testify. In making its rulings, the trial court was careful to consider when hearsay evidence was offered and pointed out that it would not rely on that hearsay evidence. Accordingly, the record at trial and the court's decision make it clear that the court was considering only admissible evidence in making its findings of fact. Having reviewed the record, we are satisfied that the trial court did not use hearsay in making any of its material findings of fact. Indeed, most of the court's factual findings were based on defendant's testimony and the admissions that she made concerning her repeated contacts with the police.

Second, defendant argues that the trial court made erroneous findings and abused its discretion. The record simply does not support that contention. The trial court made specific and detailed findings of facts concerning defendant's acts of harassment. As we have summarized, those findings are supported by substantial credible evidence and are consistent with well-established law. Defendant obviously disagrees with the trial court's findings, but her differing views are not supported by the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0146-24