# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2577-23

N.A.,[1]

    Plaintiff-Respondent,

v.

S.P.,

    Defendant-Appellant.

_____

Submitted September 18, 2025 – Decided October 7, 2025

Before Judges Mawla and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FV-11-1237-24.

Smedley Law Group, PC, attorneys for appellant (AllynMarie Smedley and Alison B. Weinroth, on the brief).

Respondent has not filed a brief.

---

[1] We use initials to protect domestic violence victims. R. 1:38-3(c)(12).

PER CURIAM

Defendant S.P. appeals from the March 12, 2024 final restraining order (FRO) entered against him in favor of plaintiff N.A. pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. He argues the evidence admitted at the hearing did not support the entry of an FRO as required by Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006). Based on our review of the record, we affirm.

I.

We glean the following facts from the hearing, during which both parties provided testimony. Plaintiff appeared self-represented, while defendant was represented by counsel.

Plaintiff and defendant were in a brief five-month dating relationship from September 2023 to early February 2024. Immediately after plaintiff ended the relationship via text, defendant saw her out with a male friend and neighbor. Plaintiff testified defendant bombarded her with more than fifty text messages on February 6 and 7. Those text messages contained numerous instances of profane language and insulting remarks directed to plaintiff, calling her, among other names, a "nothing," "b***h," "slut," "whore," and "c**t."

A-2577-23

Defendant also sent messages threatening violence against plaintiff, her property, and her neighbor. He threatened to "ruin [plaintiff]" and told her to "[w]ait until [she] see[s] what [he] do[es] with the [sexually explicit] pictures and videos." Those videos and photos showed plaintiff's naked body; some also included her face. Defendant sent some of the text messages from the parking lot that connects a bowling alley to plaintiff's home.

Plaintiff responded only once, telling defendant she was "done" with the relationship. The text messages corroborated plaintiff's testimony and were admitted into evidence without objection from defendant.

Plaintiff also testified defendant manipulated her into remaining in the relationship with him. She stated she was "afraid to [leave him]" because she was nervous about how he would react. Plaintiff further testified defendant attempted to "guilt" her into sending explicit photos, and he was "sometimes" successful in doing so. According to plaintiff, defendant reacted "the exact way" she had anticipated when the relationship ended.

Plaintiff sought a temporary restraining order (TRO) out of fear for her safety and the safety of others close to her. She testified defendant's conduct, including his daily visits to the bowling alley, caused her ongoing anxiety and discomfort.

A-2577-23

Plaintiff was granted a TRO, alleging harassment and terroristic threats. One week later, the TRO was amended to prohibit defendant from entering the bowling alley or the parking lot, as well as plaintiff's home and workplace. Defendant was served with the amended TRO at the conclusion of a hearing. Four days later, he was arrested for entering the bowling alley, in violation of the amended TRO. Notably, defendant did not object to plaintiff's testimony regarding the amended TRO.

When asked her reason for seeking a restraining order, plaintiff replied she did not feel safe around defendant. She further stated: "I just want to feel safe in my own home." Following plaintiff's testimony, defense counsel elected not to cross-examine her.

Defendant testified on his own behalf. According to defendant, his text messages were motivated by feelings of hurt and jealousy, and he expressed remorse for having sent them. He also testified he did not follow, exert control over, or harm plaintiff or her property. Nor did he assault any of her acquaintances.

Defendant also denied coercing plaintiff to take or send sexually explicit photos and videos of herself. Rather, according to defendant, plaintiff voluntarily sent the explicit photos and videos to him. Defendant acknowledged

that he returned to the bowling alley after he was served with the amended TRO, explaining he had patronized the bowling alley for over thirty years.

Following defendant's testimony, the judge permitted plaintiff to offer re-direct testimony regarding any acts committed by defendant that he had specifically denied. The judge overruled defendant's objection to this re-direct testimony, finding he had "opened the door" with his testimony and concluded such testimony was "fair game."

In response to broad questions posed by the judge, plaintiff restated defendant attempted to guilt her into sending photos. She denied defendant controlled her with money or damaged her property. Plaintiff further denied defendant had assaulted her or any other person related to or associated with her. Additionally, plaintiff testified defendant was "really jealous" and frequently accused her of cheating, which ultimately caused her to stop socializing with her friends at the bowling alley.

Following the parties' testimony, the judge rendered an oral decision on the record. In addressing the parties' credibility, the judge found plaintiff "very credible," based on her "open" and consistent testimony supported by the text messages. The judge described plaintiff's demeanor as "crying," "shaking of hands," and "breaking down in the courtroom on occasion," which demonstrated

she was "deeply affected and fearful of what defendant . . . [was] going to do to her."

The judge found defendant partially credible regarding his belief that he could patronize the bowling alley after he was served with the initial TRO, and acknowledged he was a frequent patron of the bar. In contrast to plaintiff, however, the judge determined defendant lacked credibility in several respects, including his: claim he no longer possessed the explicit photos and videos: evasiveness during questioning; failure to provide satisfactory explanations; and contradictory testimony. The judge also noted defendant was argumentative with plaintiff during cross-examination.

In considering the parties' testimony and evidence, the judge applied the two-prong test articulated in Silver in determining whether defendant committed the predicate acts of terroristic threats or harassment. The judge concluded plaintiff had not met her burden of proof as to the alleged terroristic threats.

Citing relevant case law, the judge concluded plaintiff proved defendant committed harassment. The judge found the first Silver prong was met because the series of text messages sent by defendant between February 6 and 8 were done with the intent to seriously annoy and alarm plaintiff.

6

As to the second prong of the <u>Silver</u> analysis, the judge considered the statutory factors and concluded the evidence established an immediate danger to plaintiff or her property. Accordingly, the judge entered an FRO against defendant, citing, in part, the "significant" connection to the bowling alley and plaintiff's home in extending the FRO to the bowling alley.

II.

On appeal, defendant argues the judge erred in: (1) allowing plaintiff to testify about additional allegations of domestic violence not alleged in the TRO or amended TRO; (2) creating an impermissible bias during the FRO hearing and violated the evidence rules; (3) finding defendant engaged in the coercive control of plaintiff; (4) conducting a "defective" analysis under <u>Silver</u>; (5) finding an intent to harass under N.J.S.A. 2C:33-4 was a mistake of law and not supported by the record; and (6) barring defendant from the bowling alley. Defendant also requests that, in the event this matter is remanded to the Family Part, a different judge be assigned to preside over the proceedings.

Our scope of review of Family Part orders is limited. <u>C.C. v. J.A.H.</u>, 463 N.J. Super. 419, 428 (App. Div. 2020). We owe substantial deference to the Family Part's findings because of its special expertise in family matters. <u>Cesare v. Cesare</u>, 154 N.J. 394, 413 (1998). We must "accord substantial deference to

Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C., 463 N.J. Super. at 428 (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). That deference is particularly strong when the evidence is largely testimonial and rests on a judge's credibility findings. Gnall v. Gnall, 222 N.J. 414, 428 (2015).

We will not disturb a trial judge's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (internal quotation marks omitted) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we do not accord such deference to legal conclusions and review such conclusions de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

The purpose of the PDVA is to "assure the victims of domestic violence the maximum protection from abuse the law can provide." G.M. v. C.V., 453 N.J. Super. 1, 12 (App. Div. 2018) (internal quotation marks omitted) (quoting State v. Brown, 394 N.J. Super. 492, 504 (App. Div. 2007)); see also N.J.S.A. 2C:25-18. The PDVA authorizes judges to issue an FRO against a person "after

a finding . . . is made that an act of domestic violence was committed by that person." N.J.S.A. 2C:25-29(a).

"In adjudicating a domestic violence case, the trial judge has a 'two-fold' task." J.D. v. A.M.W., 475 N.J. Super. 306, 313 (App. Div. 2023) (citing Silver, 387 N.J. Super. at 125). "The judge must first determine whether the plaintiff has proven, by a preponderance of the evidence, that the defendant committed one of the predicate acts referenced in N.J.S.A. 2C:25-19(a)." Ibid.

Should plaintiff prove a predicate act was committed, the second inquiry is whether the judge should enter an FRO "to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super at 127. While the second inquiry "is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6)." Ibid.

We first address defendant's challenge, as set forth in Point IV, to the judge's finding defendant committed the predicate act of harassment. Under N.J.S.A. 2C:33-4(a) and (c):

> a person commits a petty disorderly persons offense [of harassment] if, with purpose to harass another, he [or she]:
>
> a.   Makes, or causes to be made, one or more communications anonymously or at extremely

inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;

. . . .

c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

Intent to harass is often difficult to prove, so "purpose may and often must be inferred from what is said and done and the surrounding circumstances." R.G. v. R.G., 449 N.J. Super. 208, 226 (App. Div. 2017) (quoting State v. Castagna, 387 N.J. Super. 598, 606 (App. Div. 2006)). A finding of a purpose may also be inferred from "common sense and experience." H.E.S. v. J.C.S., 175 N.J. 309, 327 (2003) (citing State v. Hoffman, 149 N.J. 564, 577 (1997)).

The record demonstrates the judge considered the testimony elicited during the hearing and found plaintiff established harassment, by a preponderance of the evidence, based on the incessant text messages over the course of two days, as well as the content of those messages. The quantity and nature of the text messages, as well as the specific threats to send the explicit photos of plaintiff, evinced a purpose to harass and may be properly considered harassment. See State v. Burkert, 231 N.J. 257, 284-85 (2017).

In viewing the totality of the circumstances and finding defendant lacked credibility, the court properly determined defendant intended to "seriously

annoy and harass" plaintiff, consistent with her testimony regarding defendant's jealousy. See R.G., 449 N.J. Super. at 226. These findings satisfy the elements of harassment under N.J.S.A. 2C:33-4(a) and (c).

We reject defendant's argument, as articulated in Point IV, that the judge's analysis under the second prong of Silver was defective and constituted a mistake of law. The record reveals ample credible evidence to support the judge's findings. First, the judge found plaintiff credible based on her "visibl[e] fright[]" of defendant and his "coercive control" of her through his conduct—the text messages, the pressure to send sexually explicit photos and videos, and the threat of posting them.

Based on the credibility findings and the credible evidence, the judge properly concluded plaintiff established both prongs required for the issuance of an FRO. See Silver, 387 N.J. Super. at 125-27. We likewise conclude it was reasonable for the judge to extend the FRO's protection to include the bowling alley, a "relief necessary to prevent further abuse," given plaintiff's connection and proximity to the business. See J.D., 207 N.J. at 476 (quoting Silver, 387 N.J. Super. at 126-27). "At its core, the [PDVA] effectuates the notion that the victim of domestic violence is entitled to be left alone. To be left alone is, in

11

essence, the basic protection the law seeks to assure these victims." <u>Hoffman</u>, 149 N.J. at 584. Therefore, we will not disturb the court's ruling.

The remainder of defendant's arguments lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-2577-23