# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0950-24

F.M.,[1]

    Plaintiff-Respondent,

v.

D.E.E.,

    Defendant-Appellant.

_____

        Submitted January 29, 2026 – Decided March 6, 2026

        Before Judges Marczyk and Puglisi.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-1416-25.

        Hark & Hark, attorneys for appellant (Michael J. Collis, on the brief).

        Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to protect the identities of the parties. R. 1:38-3(d)(10).

In this one-sided appeal, defendant D.E.E. challenges the November 18, 2024 final restraining order (FRO) entered against him and in favor of plaintiff F.M. under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. We are constrained to vacate the FRO and remand for a new trial.

I.

Plaintiff obtained a temporary restraining order (TRO) against defendant on October 28, 2024, alleging assault and harassment. In her complaint, she claimed that on October 25, defendant pushed her on her chest and neck into the countertop behind her and then again onto the floor. Plaintiff asserted she briefly picked up a kitchen knife for self-defense but put it back down, instead deciding to leave with their children and call the police. She noted the police contacted her on the road and "arrested [her] soon after investigating the incident." Plaintiff also alleged she feared defendant, due to his "manipulative," "verbally abusive," and physically violent behavior towards her.[2]

The FRO hearing took place on November 18, 2024. Defendant was self-represented, but plaintiff was represented by counsel. At the beginning of the hearing, the court inquired whether both parties were ready to proceed, to which

---

[2] Defendant also obtained a TRO against plaintiff during this time period.

A-0950-24

defendant responded: "No. I want to get an adjournment to get a lawyer." The following colloquy then occurred:

> THE COURT: Isn't that what we discussed this morning[,][3] and you said you . . . wanted to proceed without an attorney?
>
> [DEFENDANT]: No, . . . at least not conscientiously, no. That's not what I was saying, no.
>
> THE COURT: You didn't conscientiously say this morning that you wanted to waive your right to an attorney?
>
> [DEFENDANT]: No.

The court then noted defendant had indicated he would be seeking an attorney three weeks[4] prior to that date, to which defendant replied he believed the parties had agreed to try to reach a settlement at that time.[5] The court

---

[3] The transcript from the morning was not provided on appeal.

[4] According to the TRO, the parties were directed to appear on November 4, 2024, which would have been two weeks earlier. We have also not been provided with the transcript from that date.

[5] Defendant later explained:

> [L]ast week when we met in court, I spoke to [plaintiff's] attorney and he said[] we're going to see about coming up with some kind of solution so this can all be squashed and . . . we don't even have to worry about [it] when it comes to the court date. I sa[id] okay.

3

A-0950-24

responded, stating a settlement had been proposed but not finalized. It also informed defendant he could not assume there would be further negotiations and an opportunity to get another postponement.

The court further informed defendant he would have to proceed and again asked him if he was ready, and the following colloquy occurred:

> [DEFENDANT]: Well, I don't really have another option; do I?
>
> THE COURT: Well, you could make a better argument that you are looking for a --
>
> [DEFENDANT]: Well, yeah. I mean, if that's the case, if I can make another argument, not even [thirty] minutes ago I actually just got a random call from Gloucester [p]olice, and it was actually a detective that was assigned to the --
>
> THE COURT: Sir, what [the] Gloucester City Police Department said to you over the phone is hearsay and the [c]ourt cannot consider that type of evidence.

The court subsequently concluded it would "assume . . . [defendant was] waiving [his] right to have an attorney" because he had been given three weeks to obtain one but appeared without representation. Defendant responded: "I'm not waiving my right to have an attorney. I would like to have one." The court then declared it would nonetheless be proceeding, noting the statutory requirement to hold hearings within ten days of a domestic violence complaint

4

being filed, and the matter was already three weeks old.  The court then engaged in the following colloquy:

> [DEFENDANT]:   Really quickly, . . . part of the reason why I wanted to actually get an attorney is because --
>
> THE COURT:      Sir, but you had that opportunity three weeks ago to get an attorney.
>
> [DEFENDANT]:   Yes, and what I'm saying is, part of the reason why I wanted to do that was upon researching doing pro se and [re]presenting myself, I realized that I'm supposed to . . . present the evidence beforehand[,] right?  I have evidence that I haven't sent . . . in, so everything that I have is on my --
>
> THE COURT:      Now, there is no evidence presented beforehand.  Evidence is admitted at the time of trial.

Notwithstanding defendant's request to retain counsel, the court proceeded with the trial.  Defendant testified plaintiff had returned home late on October 25, 2024, drunk, yelling, blaming him for both her brothers' and her own car accidents, and threatening defendant's and his mother's lives.  He claimed he repeatedly tried to deescalate the situation, including by physically restraining plaintiff twice:  once by pinning her against the counter and hugging her after she approached him "with her hands," and again later by putting her on the floor when she began flailing her arms in his face.  Defendant noted he also knocked

A-0950-24

a bowl of rice from plaintiff's hand "out of frustration" after she approached him, pointing chopsticks at him and threatening to kill his mother.

Defendant further testified plaintiff left their two-year-old and six-week-old children locked in her car while she continued to go back and forth from their home. He asserted she drove away at one point, still drunk, hitting his car in the process. Defendant also claimed to have video evidence of that incident. He maintained plaintiff hit him with her car three times. Defendant explained plaintiff later came back inside the home to argue with him, while the two children were still inside her car, and she called the police before hanging up on them. He testified he proceeded to call the police himself, and plaintiff again drove off with the children while he was doing so. Defendant recalled the police arriving at the house, tracking plaintiff down on the side of the road, and asking him to go with them to bring the children back home. He stated plaintiff was not in the car when he arrived on the scene and only their children were there. Defendant testified he did not know if plaintiff had been arrested at that point.

On cross-examination, defendant asserted plaintiff slapped him when her arms were flailing. He recalled informing the police plaintiff pulled a knife on him, explaining plaintiff had concealed it in her jacket and approached him with

A-0950-24

it. Defendant admitted the parties had a history of filing restraining orders against each other.

Plaintiff described defendant physically assaulting her twice on October 25: first, by pushing her back against the kitchen counter, and later by pushing her to the ground when she tried to walk away from him to eat, causing rice to fly everywhere. She explained defendant's actions made her feel unsafe, which led her to call the police and leave with their two children to go to her parents' house. Plaintiff admitted picking up a kitchen knife while defendant was cleaning up the rice and telling him: "I dare you to put your hands on me again." However, she asserted she was acting in self-defense and quickly put the knife back down before running out of the home. Plaintiff later testified defendant had not been in the same room when she grabbed the kitchen knife.

Plaintiff also admitted to "bump[ing]" into defendant's car "a little bit" while pulling her car out due to her frantic state and explained she went back in the house afterwards so defendant could not tell the police "she hit and ran." However, she denied ever hitting defendant with her car. Plaintiff also described being pulled over by the police on her way to her parents' home and being questioned regarding videos defendant had filmed before she was arrested. She testified she feared for her own safety and her children's safety.

7

A-0950-24

Following plaintiff's testimony, defendant requested to respond to her claims. The following colloquy occurred:

> THE COURT: Sir, are you . . . making closing arguments or do you want to present new evidence?
>
> [DEFENDANT]: Well, yeah. I have a bunch of evidence that I would like to present. I don't know if I should have done that while I was asking questions. This is kind of the reason why I was saying that I should get an attorney because I'm not familiar with --
>
> . . . .
>
> THE COURT: We went through that already. I denied your request for a further postponement to get an attorney.

Despite informing defendant he could not show his video evidence, as he had already had the opportunity to do so, the court nonetheless allowed defendant to present the footage to prove plaintiff hit him and his car with her car. However, based on the portion of the video it viewed, the court found "no proof of one vehicle striking another" and noted it observed only defendant screaming at plaintiff. Defendant reiterated his request to show his three videos "in full," stating he intended to rebut plaintiff's claims she was fearful of him, as well as show she hit him with her car and lied about the knife,[6] which the

---

[6] The court inquired whether defendant had video footage of plaintiff grabbing the knife, to which defendant responded he only had an audio recording.

A-0950-24

court denied, determining defendant's "videos show[ed] . . . no issues . . . of relevance."

The court then rendered an oral decision. It found defendant had "horribly screamed" at plaintiff, admitted to assaultive behavior, and had assaulted plaintiff. The court determined it was "satisfied that [plaintiff] was the subject of a brutal attack by [defendant]," which it reasoned was its basis for finding an assault took place. It further concluded plaintiff was "in horrible need of a restraining order," finding plaintiff had proved, and defendant had admitted to, "a long history of domestic violence." The court noted it could "understand . . . [plaintiff] trying to get away" from defendant and why she was so fearful of him, reasoning although plaintiff may have struck defendant's car, pushed him, and screamed at him, "all she wanted to do [wa]s get away." Accordingly, the court entered an FRO against defendant.[7]

---

[7] The court also dismissed the cross-complaint defendant filed against plaintiff, in which he alleged plaintiff committed acts of domestic violence against him. Defendant does not appeal from the dismissal of the TRO he obtained against plaintiff.

A-0950-24

Defendant argues the FRO entered against him should be vacated because the trial court failed to: provide him with the opportunity to hire an attorney; assess credibility; and make factual findings.

Our scope of review of Family Part orders is limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). We owe substantial deference to the Family Part's findings because of its special expertise in family matters. Cesare v. Cesare, 154 N.J. 394, 413 (1998). We must "accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C., 463 N.J. Super. at 428 (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). That deference is particularly strong when the evidence is largely testimonial and rests on a judge's credibility findings. Gnall v. Gnall, 222 N.J. 414, 428 (2015).

We will not disturb a trial judge's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we do not accord such deference to legal

conclusions and review such conclusions de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

The purpose of the PDVA is to "assure the victims of domestic violence the maximum protection from abuse the law can provide." G.M. v. C.V., 453 N.J. Super. 1, 12 (App. Div. 2018) (quoting State v. Brown, 394 N.J. Super. 492, 504 (App. Div. 2007)); see also N.J.S.A. 2C:25-18. The PDVA authorizes judges to issue an FRO against a person "after a finding . . . is made that an act of domestic violence was committed by that person." N.J.S.A. 2C:25-29(a).

"In adjudicating a domestic violence case, the trial judge has a 'two-fold' task." J.D. v. A.M.W., 475 N.J. Super. 306, 313 (App. Div. 2023) (quoting Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006)). "The judge must first determine whether the plaintiff has proven, by a preponderance of the evidence, that the defendant committed one of the predicate acts referenced in N.J.S.A. 2C:25-19(a)." Ibid.

Should a plaintiff prove a predicate act was committed, the second inquiry is whether the judge should enter an FRO "to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127. While the second inquiry "is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation

11

of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6) . . . ." Ibid. (citation reformatted).

Relying on this court's decision in A.A.R. v. J.R.C., defendant argues the trial court violated his due process rights by failing to afford him a reasonable opportunity to hire an attorney prior to proceeding to trial. See 471 N.J. Super. 584, 587-88 (App. Div. 2022). He points out he immediately requested an attorney once on the record the morning of trial, but he avers the court insisted on proceeding to trial based on his alleged indication he would not be seeking one earlier that morning, without inquiring into his efforts or reasoning for deciding to seek counsel at that point. Specifically, defendant asserts the court failed to consider his explanation regarding a call he received from Gloucester City police approximately thirty minutes before trial, which he avers the court erroneously dismissed as impermissible hearsay. He further contends the court failed to consider his explanation regarding his need to hire an attorney to introduce evidence, instead informing him evidence could not be submitted ahead of time.

Defendant also argues the trial court failed to make any credibility or factual determinations. He asserts the court made no specific findings regarding the events of October 25, 2024, specifically as to his allegations plaintiff: pulled

a knife on him; hit his car; hit him with her car; slapped him; was intoxicated; locked their children in her car; and threatened him and his mother.

"[O]rdinary due process protections apply in the domestic violence context, notwithstanding the shortened time frames for conducting a final hearing . . . ." J.D., 207 N.J. at 478. To "ensur[e] that defendants are not deprived of their due process rights requires our trial courts to recognize both what those rights are and how they can be protected consistent with the protective goals of the [PDVA]." Id. at 479. In this context, due process requires defendants be given "a meaningful opportunity to defend against a complaint." D.N. v. K.M., 429 N.J. Super. 592, 606 (App. Div. 2013).

While due process does not guarantee the appointment of counsel in the context of the PDVA, it does require that defendants understand their "right to retain legal counsel" and that they "receive[] a reasonable opportunity to retain an attorney." A.A.R., 471 N.J. Super. at 588. PDVA defendants must have "the opportunity to seek legal representation, if requested," and whether they are given such an opportunity is based on a "fact-sensitive" analysis. D.N., 429 N.J. Super. at 606.

We conclude the trial court failed to afford defendant the due process protections required under the PDVA. Defendant immediately requested "an

adjournment to get a lawyer" once on the record. He also responded to a subsequent question from the court stating, "I'm not waiving my right to have an attorney. I would like to have one." He later again reiterated his desire to consult counsel during the trial. Nevertheless, the trial court, reasoning defendant had three weeks to secure representation, declined to adjourn the proceeding to afford defendant an additional opportunity to retain and consult counsel. Given defendant's clear statement he was not waiving his right to counsel, the court should have been more circumspect in addressing the issue.

The court stated it would not grant an adjournment pursuant to the statutory requirement that hearings be held within ten days of a domestic violence complaint being filed, noting the matter was already over three weeks old. See N.J.S.A. 2C:25-29(a). Although we are mindful of the pressures placed upon family court judges attending to domestic violence matters, "[t]he volume of the calendar and the need to resolve each matter as efficiently as possible should not override the serious consequences associated with the entry of a domestic violence restraining order." Chernesky v. Fedorczyk, 346 N.J. Super. 34, 40 (App. Div. 2001).

Additionally, as to whether defendant had waived his right to seek counsel the morning of trial, we note, "[a]though rights may be waived, courts 'indulge

every reasonable presumption against waiver of fundamental constitutional rights.'" Mazdabrook Commons Homeowners' Ass'n v. Khan, 210 N.J. 482, 505 (2012) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). Given defendant's repeated, express assertions he was not waiving his right to have an attorney, it was improper for the court to proceed on the assumption he had previously waived the right.

Furthermore, the court did not allow defendant to explain why he had not retained an attorney during the preceding two weeks. Rather, it stopped him from discussing an alleged call he had received thirty minutes prior to trial from Gloucester City police, ruling anything the police had told him would be impermissible hearsay evidence it could not consider, which prevented defendant from fully articulating how that call may have impacted his need for counsel at the hearing. While the statements from the police may have been hearsay for the purposes of the trial, it may have informed the court why defendant needed to retain counsel.

Defendant further attempted to explain how the prior settlement discussions between him and plaintiff's counsel had influenced his decision to seek counsel, which the trial court also declined to consider. We infer defendant, after initially indicating two weeks prior to trial he intended to seek

15

counsel, could have reasonably interpreted those discussions to mean he no longer needed to retain counsel for the trial. The court should have considered these explanations in deciding whether to grant defendant's request for an adjournment, as they were relevant to whether his request was made in good faith. By disregarding them, the court failed to safeguard defendant's right to obtain counsel under the PDVA.

The court's determination is significant, given the trial turned on the parties' credibility and competing evidence. Defendant repeatedly stated he wished to present evidence, which would allegedly rebut plaintiff's narrative, including text messages, video footage, and an audio recording. However, the court declined to review that evidence, except for a portion of one video, which it found irrelevant to the matter. Had defendant been represented by counsel, his attorney may have presented arguments to persuade the court to consider his evidence.

Accordingly, we vacate the FRO entered against defendant, reinstate the TRO, and remand the matter for a new trial. To the extent defendant intends to retain counsel for the new trial, he shall do so promptly or risk having to retry this matter as a self-represented litigant.

16

Based on our conclusion, we need not address defendant's remaining arguments regarding the trial court's credibility determinations or factual findings. However, because the trial court judge made findings based on a limited review of the evidence and may be perceived as committed to his original conclusions, we find it is appropriate to assign the case to a different trial judge. See R.L. v. Voytac, 199 N.J. 285, 306 (2009) (finding it "appropriate" to assign the remanded matter to a different trial judge "[b]ecause the trial court previously made credibility findings"); Penbara v. Straczynski, 347 N.J. Super. 155, 163 (App. Div. 2002) (requiring a different judge to hear a retried case where the trial judge "may have a commitment to [their] original perception of the [witness]'s credibility," which was based on an erroneously limited evidentiary record).

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

17